John P. Hooper (JH 4262)
Eric F. Gladbach (EG 9103)
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
*Attorneys for Defendant*
*Fox Broadcasting Company*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 4KIDS ENTERTAINMENT, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : **NOTICE OF REMOVAL** |
| | : |
| FOX BROADCASTING COMPANY, | : |
| | : |
| Defendant. | : |

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1441 and 1446, Fox

Broadcasting Company ("Fox"), defendant in the above-captioned action, hereby notices

the removal of this action from the Supreme Court of the State of New York, County of

New York, to the United States District Court for the Southern District of New York.

This is a civil action over which this Court has original subject matter jurisdiction

pursuant to 28 U.S.C. § 1332(a), because it is an action between citizens of different

States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs.

The grounds for removal are more particularly stated as follows:

1.      On April 24, 2008, Plaintiff, 4Kids Entertainment, Inc. ("4Kids"), commenced an action in the Supreme Court of the State of New York, County of New York, captioned *4Kids Entertainment, Inc. v. Fox Broadcasting Company*, Index No. 08601232.  A true and correct copy of the Summons and Complaint is attached hereto as Exhibit A, which constitutes all pleadings and process in this action.

2.      On April 25, 2008, 4Kids served a copy of the Summons and the Complaint on the New York Department of State, Division of Corporations.

3.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed, as it has been filed within thirty (30) days of receipt by Fox of a copy of the initial pleading.

## DIVERSITY OF CITIZENSHIP

4.      The citizenship of 4Kids in this action is diverse from the citizenship of Fox pursuant to 28 U.S.C. § 1332(a).

5.      4Kids alleges in its Complaint that it is a corporation organized under the laws of the State of New York with its principal place of business in New York County. (See Complaint at ¶ 10.)  Based on this allegation and upon information and belief, 4Kids is a citizen of the State of New York for diversity purposes.

6.      Fox is a corporation organized under the laws of the State of Delaware. (See Complaint at ¶ 11.)  Fox's principal place of business – where its business is directed and controlled – is Los Angeles, California.  Fox is therefore a citizen of the States of Delaware and California pursuant to 28 U.S.C. § 1332(c)(1).

7.      Accordingly, complete diversity exists pursuant to 28 U.S.C. § 1332(a)(1).

## AMOUNT IN CONTROVERSY

8.    Diversity jurisdiction under 28 U.S.C. § 1332 also requires that the amount in controversy, exclusive of interest and costs, be in excess of $75,000.

9.    The Complaint demands, *inter alia*, a declaratory judgment entitling 4Kids to at least an $11.1 million reduction in fees paid for the 2002-03 through 2006-07 Broadcast Seasons, as well as additional damages under its breach of contract claim.  (See Complaint at ¶¶ 6-9; 36-37; 39; 41).

10.    Accordingly the amount in controversy exceeds $75,000, exclusive of interest and costs, thereby conferring on this Court subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

## NOTICE

11.    As required by 28 U.S.C. § 1446(d), Fox will give prompt notice of removal to 4Kids, through its attorneys of record, Frederic W. Yerman and Michael A. Lynn at the law firm of KAYE SCHOLER LLP.

12.    As required by 28 U.S.C. § 1446(d) a copy of this Notice is being filed with the Clerk of the Supreme Court of the State of New York, New York County.

13.    In filing this Notice of Removal, Fox does not waive any objections it may have to defects in process or service of process or any other defense, including but not limited to, the defense that this action is barred by the applicable statute of limitations.

WHEREFORE Defendant Fox Broadcasting Company respectfully requests that the above-entitled action be removed from the Supreme Court of the State of New York, New York County to this Court.

Dated:  May 27, 2008
        New York, New York

                                  Respectfully submitted,
                                  REED SMITH LLP


                                  _____
                                  John P. Hooper (JH 4262)
                                  Eric F. Gladbach (EG 9103)
                                    599 Lexington Avenue
                                    New York, NY 10022
                                    Tel. (212) 521-5400
                                    Fax (212) 521-5450

                                  *Attorneys for Defendant*
                                  *Fox Broadcasting Company*

- 4 -



State of New York - Department of State
Division of Corporations

Party Served:                                                    Plaintiff/Petitioner:
 FOX BROADCASTING COMPANY                                         4KIDS ENTERTAINMENT, INC.

RECEIVED

MAY - 5 2008

 GARY ROBERTS
 10201 W. PICO BLVD.                                             FOX GROUP LEGAL
 LOS ANGELES,  CA 90035

Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 04/25/2008 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
 This copy is being transmitted pursuant to such statute to the address
provided for such purpose.

                                                            Very truly yours
                                                       Division of Corporations

UCS-840 (REV 1/2000)

## REQUEST FOR JUDICIAL INTERVENTION

SUPREME COURT, NEW YORK COUNTY INDEX NO. DATE PURCHASED:

601232/08    4-24-08

| For Clerk Only |
| --- |
| IAS entry date |
| Judge Assigned |
| RJI Date |

PLAINTIFF(S):
4KIDS ENTERTAINMENT, INC.

DEFENDANT(S):
FOX BROADCASTING COMPANY

Date issue joined: N/A          Bill of particulars served (Y/N):    [    ] Y    [ × ] N

### NATURE OF JUDICIAL INTERVENTION (check ONE box only AND enter information)

[    ] Request for preliminary conference

[    ] Note of issue and/or certificate of readiness

[    ] Notice of motion (return date:_____)
Relief sought _____

[    ] Order to show cause
(clerk enter return date:_____)
Relief sought

[    ] Other ex parte application (specify:_____)

[    ] Notice of petition (return date:_____)
Relief sought _____

[    ] Notice of medical or dental malpractice
action (specify:_____)

[    ] Statement of net worth

[    ] Writ of habeas corpus

[ × ] Other (specify: Request for judicial assignment)

### NATURE OF ACTION OR PROCEEDING (Check ONE box only)

#### MATRIMONIAL

| | | |
| --- | --- | --- |
| [    ] | Contested | -CM |
| [    ] | Uncontested | -UM |

#### COMMERCIAL

| | | |
| --- | --- | --- |
| [ × ] | Contract | -CONT |
| [    ] | Corporate | -CORP |
| [    ] | Insurance (where insurer is a party, except arbitration) | -INS |
| [    ] | UCC (including sales, negotiable instruments) | -UCC |
| [    ] | *Other Commercial | -OC |

#### REAL PROPERTY

| | | |
| --- | --- | --- |
| [    ] | Tax Certiorari | -TAX |
| [    ] | Foreclosure | -FOR |
| [    ] | Condemnation | -COND |
| [    ] | Landlord/Tenant | -LT |
| [    ] | *Other Real Property | -ORP |

#### OTHER MATTERS

| | | |
| --- | --- | --- |
| [    ] | *_____ | -OTH |

### TORTS

Malpractice

| | | |
| --- | --- | --- |
| [    ] | Medical/Podiatric | -MM |
| [    ] | Dental | -DM |
| [    ] | *Other Professional | -OPM |
| [    ] | Motor Vehicle | -MV |
| [    ] | *Products Liability | -PL |
| [    ] | Environmental | -EN |
| [    ] | Asbestos | -ASB |
| [    ] | Breast Implant | -BI |
| [    ] | *Other Negligence | -OTN |
| [    ] | *Other Tort (including intentional) | -OT |

### SPECIAL PROCEEDINGS

| | | |
| --- | --- | --- |
| [    ] | Art. 75 (Arbitration) | -ART75 |
| [    ] | Art. 77 (Trusts) | -ART77 |
| [    ] | Art. 78 | -ART78 |
| [    ] | Election Law | -ELEC |
| [    ] | Guardianship (MHL Art. 81) | -GUARD81 |
| [    ] | *Other Mental Hygiene | -MHYG |
| [    ] | *Other Special Proceeding | -OSP |

08 cv 4865

John P. Hooper (JH 4262)
Eric F. Gladbach (EG 9103)
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Tel. (212) 521-5400
*Attorneys for Defendant*
*Fox Broadcasting Company*



RECEIVED
MAY 2 7 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

4KIDS ENTERTAINMENT, INC.,

                Plaintiff,

- against -

FOX BROADCASTING COMPANY,

                Defendant.

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1441 and 1446, Fox

Broadcasting Company ("Fox"), defendant in the above-captioned action, hereby notices

the removal of this action from the Supreme Court of the State of New York, County of

New York, to the United States District Court for the Southern District of New York.

This is a civil action over which this Court has original subject matter jurisdiction

pursuant to 28 U.S.C. § 1332(a), because it is an action between citizens of different

States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs.

The grounds for removal are more particularly stated as follows:

1.     On April 24, 2008, Plaintiff, 4Kids Entertainment, Inc. ("4Kids"), commenced an action in the Supreme Court of the State of New York, County of New York, captioned *4Kids Entertainment, Inc. v. Fox Broadcasting Company*, Index No. 08601232. A true and correct copy of the Summons and Complaint is attached hereto as Exhibit A, which constitutes all pleadings and process in this action.

2.     On April 25, 2008, 4Kids served a copy of the Summons and the Complaint on the New York Department of State, Division of Corporations.

3.     Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed, as it has been filed within thirty (30) days of receipt by Fox of a copy of the initial pleading.

## DIVERSITY OF CITIZENSHIP

4.     The citizenship of 4Kids in this action is diverse from the citizenship of Fox pursuant to 28 U.S.C. § 1332(a).

5.     4Kids alleges in its Complaint that it is a corporation organized under the laws of the State of New York with its principal place of business in New York County. (See Complaint at ¶ 10.) Based on this allegation and upon information and belief, 4Kids is a citizen of the State of New York for diversity purposes.

6.     Fox is a corporation organized under the laws of the State of Delaware. (See Complaint at ¶ 11.) Fox's principal place of business – where its business is directed and controlled – is Los Angeles, California. Fox is therefore a citizen of the States of Delaware and California pursuant to 28 U.S.C. § 1332(c)(1).

7.     Accordingly, complete diversity exists pursuant to 28 U.S.C. § 1332(a)(1).

### AMOUNT IN CONTROVERSY

8.       Diversity jurisdiction under 28 U.S.C. § 1332 also requires that the amount in controversy, exclusive of interest and costs, be in excess of $75,000.

9.       The Complaint demands, *inter alia*, a declaratory judgment entitling 4Kids to at least an $11.1 million reduction in fees paid for the 2002-03 through 2006-07 Broadcast Seasons, as well as additional damages under its breach of contract claim. (See Complaint at ¶¶ 6-9; 36-37; 39; 41).

10.      Accordingly the amount in controversy exceeds $75,000, exclusive of interest and costs, thereby conferring on this Court subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

### NOTICE

11.      As required by 28 U.S.C. § 1446(d), Fox will give prompt notice of removal to 4Kids, through its attorneys of record, Frederic W. Yerman and Michael A. Lynn at the law firm of KAYE SCHOLER LLP.

12.      As required by 28 U.S.C. § 1446(d) a copy of this Notice is being filed with the Clerk of the Supreme Court of the State of New York, New York County.

13.      In filing this Notice of Removal, Fox does not waive any objections it may have to defects in process or service of process or any other defense, including but not limited to, the defense that this action is barred by the applicable statute of limitations.

WHEREFORE Defendant Fox Broadcasting Company respectfully requests that

the above-entitled action be removed from the Supreme Court of the State of New York,

New York County to this Court.

Dated:  May 27, 2008
       New York, New York

                                      Respectfully submitted,
                                      REED SMITH LLP

                                    John P. Hooper (JH 4262)
                                    Eric F. Gladbach (EG 9103)
                                        599 Lexington Avenue
                                        New York, NY 10022
                                        Tel. (212) 521-5400
                                        Fax (212) 521-5450

                                      *Attorneys for Defendant*
                                      *Fox Broadcasting Company*

Exhibit A



State of New York - Department of State
Division of Corporations

Party Served:
 FOX BROADCASTING COMPANY

Plaintiff/Petitioner:
    4KIDS ENTERTAINMENT, INC.

GARY ROBERTS
10201 W. PICO BLVD.
LOS ANGELES,  CA 90035

RECEIVED
MAY - 5 2008
FOX GROUP LEGAL

Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 04/25/2008 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
 This copy is being transmitted pursuant to such statute to the address
provided for such purpose.

Very truly yours
Division of Corporation

UCS-840 (REV 1/2000)

REQUEST FOR JUDICIAL INTERVENTION

SUPREME COURT, NEW YORK COUNTY INDEX NO. DATE PURCHASED:

601232/08    4-24-08

| For Clerk Only |
|---|
| IAS entry date |
| Judge Assigned |
| RJI Date |

PLAINTIFF(S):
4KIDS ENTERTAINMENT, INC.

DEFENDANT(S):
FOX BROADCASTING COMPANY

Date issue joined: N/A        Bill of particulars served (Y/N):    [    ] Y    [ × ] N

## NATURE OF JUDICIAL INTERVENTION (check ONE box only AND enter information)

[    ] Request for preliminary conference

[    ] Note of issue and/or certificate of readiness

[    ] Notice of motion (return date:_____)
Relief sought _____

[    ] Order to show cause
(clerk enter return date:_____)
Relief sought

[    ] Other ex parte application (specify:_____)

[    ] Notice of petition (return date:_____)
Relief sought _____

[    ] Notice of medical or dental malpractice
action (specify:_____)

[    ] Statement of net worth

[    ] Writ of habeas corpus

[ × ] Other (specify: Request for judicial
assignment )

## NATURE OF ACTION OR PROCEEDING (Check ONE box only)

### MATRIMONIAL
[    ] Contested                                    -CM
[    ] Uncontested                                  -UM

### COMMERCIAL
[ × ] Contract                                      -CONT
[    ] Corporate                                    -CORP
[    ] Insurance (where insurer is a party, except  -INS
arbitration)
[    ] UCC (including sales, negotiable instruments) -UCC
[    ] *Other Commercial                            -OC

### REAL PROPERTY
[    ] Tax Certiorari                               -TAX
[    ] Foreclosure                                  -FOR
[    ] Condemnation                                 -COND
[    ] Landlord/Tenant                              -LT
[    ] *Other Real Property                         -ORP

### OTHER MATTERS
[    ] *_____                            -OTH

### TORTS
Malpractice
[    ] Medical/Podiatric                            -MM
[    ] Dental                                       -DM
[    ] *Other Professional                          -OPM

[    ] Motor Vehicle                                -MV
[    ] *Products Liability                          -PL

[    ] Environmental                                -EN
[    ] Asbestos                                     -ASB

[    ] Breast Implant                               -BI
[    ] *Other Negligence                            -OTN

[    ] *Other Tort (including                       -OT
intentional)

### SPECIAL PROCEEDINGS
[    ] Art. 75 (Arbitration)                        -ART75
[    ] Art. 77 (Trusts)                             -ART77
[    ] Art. 78                                      -ART78
[    ] Election Law                                 -ELEC
[    ] Guardianship (MHL Art. 81)                   -GUARD81
[    ] *Other Mental Hygiene                        -MHYG
[    ] *Other Special Proceeding                    -OSP

Check "YES" or "NO" for each of the following questions:

Is this action/proceeding against a

| YES | NO | | YES | NO | |
|---|---|---|---|---|---|
| \| | [ ✕ ] | Municipality (Specify_____) | \| | \| \| ✕ | Public Authority: (Specify_____) |

| YES | NO | |
|---|---|---|
| \| ✕ \| | [ ] | Does this action/proceeding seek equitable relief? |
| ˙\| | \| [ ✕ ] | Does this action/proceeding seek recovery for personal injury? |
| \| | \| [ ✕ ] | Does this action/proceeding seek recovery for property damage? |

**Pre-Note Time Frames:**
(This applies to all cases except contested matrimonials and tax certiorari cases)

Estimated time period for case to be ready for trial (from filing of RJI to filing of Note of Issue):

Expedited: 0-8 months        ✕ Standard: 9-12 months        Complex: 13-15 months

**Contested Matrimonial Cases Only:** (Check and give date)

| | | |
|---|---|---|
| Has summons been served? | No | Yes, Date _____ |
| Was a Notice of No Necessity filed? | No | Yes, Date _____ |

**ATTORNEY(S) FOR PLAINTIFF(S):**

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| | KAYE SCHOLER LLP (By Fredric W. Yerman and Michael A. Lynn) | 425 PARK AVENUE, NEW YORK, NEW YORK 10022 | 212-836-8000 |

**ATTORNEY(S) FOR DEFENDANT(S):**

| Self Rep.* | Name | Address | Phone # |
|---|---|---|---|
| | UNKNOWN | | |

*Self Represented: parties representing themselves, without an attorney, should check the "Self Rep." box and enter their name, address, and phone # in the space provided above for attorneys.

**INSURANCE CARRIERS:**

**RELATED CASES: (IF NONE, write "NONE" below):**

| Title | Index # | Court | Nature of Relationship |
|---|---|---|---|
| NONE | | | |

        I AFFIRM UNDER PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.

Dated:   APRIL 24, 2008

_____
(SIGNATURE)
FREDRIC W. YERMAN

_____
(PRINT OR TYPE NAME)
PLAINTIFF 4KIDS ENTERTAINMENT, INC.

_____
ATTORNEY FOR

ATTACH RIDER SHEET IF NECESSARY TO PROVIDE REQUIRED INFORMATION

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                          :
                                                          :
4KIDS ENTERTAINMENT, INC.,                                :
                                                          :
                    Plaintiff,                            :        Index No. 601232/08
                                                          :        Date purchased: 4/24/08
        v.                                                :        STATEMENT IN SUPPORT
                                                          :        OF REQUEST FOR    Date filed:
FOX BROADCASTING COMPANY,                                 :        ASSIGNMENT TO      4/24/08
                                                          :        COMMERCIAL DIVISION
                    Defendant.                            :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Fredric W. Yerman, counsel for 4 Kids Entertainment, Inc., the Plaintiff in this matter,
submits this Statement and the accompanying copy of the pleadings, pursuant to Section 202.70
(d) (2) of the Uniform Rules for the Trial Courts, in support of the request for the assignment of
this matter to the Commercial Division of this court.

        (1) I have reviewed the standards for assignment of cases to the Commercial Division set
forth in Section 202.70. This case meets those standards, and I, therefore, request that this case
be assigned to the Commercial Division.

        (2) The principal claim is for declaratory relief with respect to a contract between two
corporations.  The declaratory relief that is sought is alleged to arise out of business dealings
between the parties.  Thus, this case meets the standards for assignment to the Commercial
Division pursuant to Section 202.70(b) of the Uniform Rules for the Trial Courts.  Alternatively,
the Complaint asserts a second claim for breach of contract and the sums at issue with respect to
that claim (exclusive of punitive damages, interest, costs, disbursements, and counsel fees
claimed) are in excess of the monetary threshold of the Division in this county as set forth in
Section 202.70(a).

        (3) This case does not come within the groups of cases set forth in Section 202.70(c) that
will not be heard in the Commercial Division.

Dated: April 24, 2008

                                        Fredric W. Yerman, Esq.
                                        Kaye Scholer LLP
                                        425 Park Avenue
                                        New York, NY 10022
                                        212-836-8000 (Phone)
                                        212-836-8689 (Fax)
                                        fyerman@kayescholer.com

31637551.DOC

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

4KIDS ENTERTAINMENT, INC.,

                                        Plaintiff,

    – against --

FOX BROADCASTING COMPANY,

                                        Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Date filed: 4/24/08

Index No. 601232/08
Date Purchased: 4/24/08

Plaintiff designates New York
County as the place of trial

The basis of venue is Plaintiff's
Residence

**SUMMONS**

Plaintiff resides in New York
County


To the above named Defendant: Fox Broadcasting Company

      YOU ARE HEREBY SUMMONED  to answer the Complaint in this action

and to serve a copy of your answer, or if the complaint is not served with this summons, to serve a

notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is not

personally delivered to you within the State of New York); and in case of your failure to appear or

answer, judgment will be taken against you by default for the relief demanded in the complaint.


Dated: April 24, 2008

             Kaye Scholer LLP


             By: _____
                Fredric W. Yerman
             425 Park Avenue
             New York, New York 10022
             (212) 836-8000
             Attorneys for Plaintiff

Doc #31636702.WPD

Defendant's Address:

10201 West Pico Blvd.
Los Angeles, CA 90053

Registered Agent in New York:
Twentieth Century Fox Film Corp.
40 West 57th Street
New York, New York 10019

SUPREME COURT OF THE STATE OF NEW
COUNTY OF NEW YORK

---

4KIDS ENTERTAINMENT, INC.,

                                    Plaintiff,

          -against-

FOX BROADCASTING COMPANY,

                                    Defendant.

---

Index No. 601232/08

Date purchased: 4/24/08

COMPLAINT

Date filed: 4/24/08

---

        4Kids Entertainment, Inc. ("4Kids"), by and through its by its counsel, Kaye Scholer LLP, for its complaint against defendant Fox Broadcasting Company ("FOX") alleges, upon knowledge as to itself and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

        1.    This is an action for a declaratory judgment and for breach of contract based upon FOX's failure to fulfill its contractual obligations to 4Kids. 4Kids is, among other things, in the business of broadcasting and syndicating children's television programming. Pursuant to a written contract entered into by 4Kids and FOX on January 18, 2002 and subsequently amended (the "Contract"), FOX agreed to license to 4Kids a specific four-hour block of network television broadcast time on Saturday mornings for six successive one-year broadcast seasons. 4Kids was granted the right to program the four-hour block and to sell the national commercial time in the four-hour block.

        2.    The Contract specified with great precision the four-hour block that 4Kids was licensing. The Contract defined the term "Block" as follows:

        "Block" means the Saturday morning time period commencing at 8:00 am and

        ending at 11:59:50 am in the Eastern and Pacific time zones and commencing at

7:00 am and ending at 10:59:50 am in the Mountain and Central time zones throughout the Programming Term."

3.    4Kids agreed to pay FOX a fee in excess of $25 million per season for each of the 2002-2003 through 2005-2006 Broadcast Seasons and $20 million for each of the 2006-2007 and 2007-2008 Broadcast Seasons.

4.    Pursuant to paragraph 3 of the Contract, FOX further agreed that if FOX did not broadcast 4Kids' programming during the licensed block of time on stations broadcasting to at least 90% of United States television households, the fee that 4Kids paid to FOX would be reduced according to a formula set forth in the Contract.  This important provision ensured that 4Kids would get what it was paying for in terms of having the 4Kids programming broadcast by Fox during the Block (which is considered "prime-time" for children's programming) to at least 90% of U.S. television households.

5.    For each of the 2002-03 through 2006-07 broadcast seasons, Fox failed to satisfy its obligation to broadcast 4Kids' programming during the licensed block of time on stations broadcasting to at least 90% of United States television households.  This was caused by, among other things, the failure to broadcast the 4Kids' programming during the Block in a number of major metropolitan markets and the decision to broadcast the 4Kids' programming in certain markets at different times on Saturday mornings outside of the specified hours of the Block or to broadcast the 4Kids' programming on Sunday morning.

6.    Pursuant to paragraph 3 of the Contract, and in accordance with the formula set forth therein, 4Kids is entitled to a reduced fee in the amount of at least $11.1 million by reason of FOX's failure to broadcast 4Kids' programming during the licensed block of time on stations broadcasting to at least 90% of United States television households during

the 2002-03 through 2006-07 Broadcast Seasons. 4Kids has notified FOX that 4Kids is entitled

to this reduced fee under the terms of the Contract, but FOX has notified 4Kids in response that

it is FOX's position that 4Kids is entitled to no reduced fee whatsoever.

       7.    In order for 4Kids to receive the benefit of the fee reduction, paragraph 3

of the Contract further provides that 4Kids is entitled to deduct or offset any such reduction

from future amounts it would owe FOX. Accordingly, on April 1, 2008, 4Kids offset $5

million of the $11.1 million fee reduction it is owed by FOX against the $5 million quarterly

payment that was due FOX on that date. 4Kids intends to offset another $5 million of the $11.1

million fee reduction it is owed, together with any additional fee reduction to which it may then

be entitled, against the next $5 million quarterly payment due FOX on July 1, 2008, and against

future quarterly payments that may be due.

       8.    4Kids seeks a declaratory judgment that: (i) FOX has failed to broadcast

4Kids' programming during the licensed block of time on stations broadcasting to at least 90%

of United States television households during each of the 2002-03 through 2006-07 Broadcast

Seasons pursuant to paragraph 3(a) of the Contract; (ii) under paragraph 3(a) of the Contract,

4Kids is entitled to at least an $11.1 million reduction in fees that it already paid FOX for the

2002-03 through 2006-07 Broadcast Seasons; and (iii) pursuant to paragraph 3 of the Contract,

4Kids is permitted to offset such fees, plus any additional fee reduction it may then be owed,

against future amounts owed to FOX.

       9.    4Kids also asserts a breach of contract claim against FOX for its failure to

broadcast 4Kids' programming during the licensed block of time on stations broadcasting to at

least 90% of United States television households during each of the 2002-03 through 2006-07

Broadcast and seeks additional damages to be proved at trial, including the loss of advertising

and merchandising revenue, together with prejudgment interest, costs, disbursements and attorneys' fees.

## THE PARTIES

10.    4Kids is a corporation organized under the laws of the State of New York with its principal place of business in New York County.

11.    FOX is a corporation organized under the law of the State of Delaware and licensed to do business in the State of New York.  FOX's registered agent in New York is Twentieth Century Fox Film Corp., located at 40 West 57th Street, New York, New York 10019.

## JURISDICTION AND VENUE

12.    This Court has personal jurisdiction over FOX because FOX maintains significant business operations in New York County, including WNYW, the flagship station of the FOX Broadcasting Network, is licensed to do business in the State of New York and the contract at issue was negotiated by 4Kids from its offices in New York County.

13.    Venue lies in New York County pursuant to CPLR § 503.

## STATEMENT OF FACTS

A.    THE CONTRACT

14.    On or about January 18, 2002, 4Kids and FOX entered into the Contract, which was entitled "FOX Broadcasting Company and 4Kids Entertainment, Inc. Saturday Morning Programming Block Time License Minimum Terms."  The Contract was amended in writings signed by both parties on March 2, 2006 and March 30, 2006.  A true and correct copy of the Contract and relevant amendments is annexed hereto as Exhibit A and incorporated herein.

15.    Initially, the term of the Contract ran from September 14, 2002 to September 9, 2006.  Subsequently, the parties amended the Contract to extend the term to September 8, 2008 and to give FOX the option to lease the four-hour block to 4Kids for the 2008-2009 broadcast season.  FOX exercised the option and the Contract's term has been extended to September 7, 2009.

16.    Pursuant to the Contract, FOX agreed to license to 4Kids a specific four hour block of network time on Saturday mornings for successive one year broadcast seasons. The Contract defined the four-hour block of time being licensed to 4Kids, that is, the Block, as: the Saturday morning time period commencing at 8:00 am and ending at 11:59:50 am in the Eastern and Pacific time zones, and commencing at 7:00 am and ending at 10:59:50 am in the Mountain and Central time zones, throughout the Programming Term.

17.    4Kids leased the Block in order to broadcast its own programming, as well as commercials for which it would charge advertisers.  4Kids programming was largely animated entertainment shows including such popular programs as "Teenage Mutant Ninja Turtles" and "Yu-Gi-Oh!"  It is well recognized in the television industry that Saturday morning is "prime time" for children's cartoons.  Children are home from school on Saturday and parents typically allow their children to watch television during that block of time.  Thus, Saturday morning is the most desirable time period for the broadcast of children's programming.

18.    To take advantage of this valuable broadcast time, it was important to 4Kids that its programming be broadcast on all stations simultaneously (adjusted for time zones) within the specific four-hour Block it had licensed on Saturday mornings; that is, that it be broadcast "in pattern."  "In pattern" broadcasting refers to broadcasting that presents

television shows in the same order and at the same times (adjusted for different time zones) on all television stations where it is being broadcast. The advantage of being broadcast "in pattern" is that makes it possible to nationally advertise and promote specific programs by telling the entire nation-wide audience when and where to tune in to see that show. If a television program is not being broadcast "in pattern," it is more difficult to advertise and promote the show nationally which typically results in lower ratings.

19.    FOX's failure to broadcast the 4Kids' programming in pattern during the Block also damaged the ratings of the programming and resulted in lower advertising revenues. This is because there is a substantial difference in the number of people using television (referred to as "PUT" levels) during each hour of the four hour block for the relevant demographic (children 6-11) to which 4Kids telecasts its programming. For example, there are almost three times as many children watching television during the hour of 11 am to 12 pm as are watching television during the hour of 7 am to 8 am. Thus, losing the last hour of the four hour Block to a pre-emption, or shifting the entire four hour block to be telecast one hour earlier (*e.g.*, 7 am to 11 am in an Eastern time zone market as opposed to the required 8 am to 12 pm telecast in the Eastern time zone market) means that far fewer viewers will watch the programming, which has a dramatic, negative effect on television ratings for the programming.

20.    4Kids typically sells commercial units to advertisers on a "guaranteed rating basis." This means that the broadcaster promises the advertiser that the advertiser's commercial will be broadcast during programming attaining a certain minimum rating. If the advertising runs on television programs that do not deliver the promised ratings, the broadcaster typically has to give the advertiser one or more "make good" advertisements for which no fee is charged. The ratings from the "make good" advertisements are then added to the rating

delivered by the original round of advertisements until such time as the broadcaster has delivered the rating level that has been contracted for by the advertiser. If a broadcaster has to offer "make good" advertisements because of lower ratings, the broadcaster will have less commercial time to sell which, in turn, reduces the advertising revenues the broadcaster can earn from the sale of advertising on the Block.

21.    The Contract required Fox to broadcast the 4Kids programming within the Block in designated market areas ("DMAs") as defined by Nielsen Media Research ("Nielsen") containing 90% or more of U.S. television households. The aggregate percentage of U.S. television households reached by a television network (either through network owned stations or network station affiliates) is referred to in the television industry as "Network Clearance." A Network Clearance of 90% or more of U.S. television households is what enables broadcasters to obtain premium advertising rates from television advertisers, who are most interested in having their national advertisements viewed widely across the nation. The four major television networks, ABC, CBS, NBC and FOX, each have a Network Clearance in excess of 95% of U.S. television households.

22.    In exchange for the right to air programming during the Block on Saturday morning, 4Kids agreed to pay FOX a fee in excess of $25 million for each of the 2002-03 through 2005-2006 Broadcast Seasons and a fee of $20 million for each of the 2006-07 and 2007-08 Broadcast Seasons.

23.    In view of the importance of both the broadcast of the 4Kids' programming "in pattern" during the Block and the broadcast of such 4Kids TV programming to DMAs constituting at least 90% of U.S. television households, the Contract expressly provided that if, over the course of any Broadcast Season, the average Network Clearance for

4Kids Programming during the Block was less than 90% of U.S. television households, the 4Kids' fee paid to FOX would be reduced according to a formula set forth in the Contract. In order for 4Kids to receive the benefit of the reduction, the Contract provides that 4Kids is entitled to deduct or offset any such reduction from future amounts it would owe FOX or, if the amount of the reduction is larger than the remaining payments due to FOX under the Contract, to receive a prompt refund in cash. Thus, paragraph 3 of the Contract provides:

3.      Broadcast Coverage

a.      Reduction in Fee for Loss of National Coverage. If the average Network clearance for the Block for a Broadcast Season during the Programming Term (and the Programming Extension Term, if applicable) is below 90% of the television households in the U.S. ("U.S. Households") due to causes other than events of force majeure on a Station-by-Station basis but not on a Network-wide basis, pre-emptions for the Sports Programming set forth in paragraph 3.d. below, or Company's failure to deliver Programs, as set forth in this Term Sheet, then the Time Buy Fee for that Broadcast Season shall be an amount equal to the Time Buy Fee for that Broadcast Season, multiplied by a fraction, the numerator of which shall be the actual average percentage of Network clearance achieved and the denominator of which shall be 90 (e.g., if during the 2002-2003 Broadcast Season, Programs are made available to an average of 88% of U.S. Households, then the 2002-2003 Time Buy Fee shall be an amount equal to the 2002-2003 Time Buy Fee multiplied by 88/90).

*   *   *

c.      The amount by which any Time Buy Fee is reduced pursuant to this Paragraph 3. shall be deducted from Company's remaining payments due pursuant to Paragraph 5. below, or if such deduction from the remaining payments is insufficient to fully compensate Company for the amount of such reduction, then FOX shall promptly refund in cash to Company the amount that Company was unable to deduct from the remaining payments.

**B.    FOX FAILS TO DELIVER 90% NETWORK CLEARANCE FOR EACH BROADCAST SEASON**

24.    In each of the 2002-03 through 2006-07 Broadcast Seasons, FOX failed to deliver the 90% Network Clearance required by the Contract.  FOX's actual Network Clearance for each of the 2002-2003 through 2006-2007 Broadcast Seasons was substantially below the 90% Network Clearance required by the Contract.

25.    FOX's failure to deliver the 90% Network Clearance was caused by, among other things, its failure to broadcast the 4Kids programming in a number of major metropolitan markets.  In other DMAs, FOX broadcast 4Kids programming on different and less desirable days and at different and less desirable times.  By failing to broadcast 4Kids' programming "in pattern" during the Block, FOX not only deprived 4Kids of the most desirable time slot for children's programming, but also deprived 4Kids of the ability to more effectively advertise and promote its shows.

26.    Broadcasters typically attempt to maintain and improve ratings by ascertaining which shows provide the best "lead in" and lead out" for the surrounding programs in the lineup.  Whenever FOX failed to broadcast the 4Kids' programming "in pattern" during the Block, it also negated the audience flow that 4Kids attempted to create within its lineup of programming.

27.    FOX's failure to broadcast 4Kids' programming "in pattern" during the Block also rendered 4Kids' own promotional messages within its programming incorrect and created confusion for the target audience of young viewers. For example, shows that 4Kids promoted on the Block as coming up next or later that morning were not, in fact, broadcast in the next half hour slot or later that morning in various DMAs.  In addition, when FOX pre-empted certain shows, the promotional messages in those programs were also thereby rendered incorrect and ineffective.  For example, when the pre-empted shows referred to episodes to be airing "next week," there was no way for viewers to understand whether that referred to "next week" at the same altered time period, or on Saturday morning in its regular time period. Finally, 4Kids could not effectively advise viewers and potential viewers on a national basis to watch 4Kids programming on FOX on Saturday mornings because, in some markets, the 4Kids programming was broadcast on Sunday morning, in other markets it was broadcast at different times on Saturday outside of the Block, in other markets the 4Kids programming was broadcast on Fox-owned but non-Fox branded stations and, in still other markets, the 4Kids programming was broadcast on stations that were not part of the FOX network.

28.    As a result of FOX's failure to broadcast 4Kids' programming "in pattern" during the Block to 90% of US television households, 4Kids is entitled, pursuant to paragraph 3 of the Contract, to a reduction in the Time Buy Fee it paid for each broadcast season from 2002-2003 to 2006-2007 based on the formula set forth in paragraph 3 of the Contract.  The amount due 4Kids by reason of FOX's failure to achieve the 90% Network Clearance is at least $11.1 million for the 2002-03 through 2006-07 Broadcast Seasons.

29.    Pursuant to the Contract, 4Kids was to make a $5 million payment to FOX on April 1, 2008. As provided for in Paragraph 3(c) of the Agreement, 4Kids offset $5 million of the at least $11.1 million fee reduction to which it is entitled, and did not make the April 1, 2008 payment to FOX.

30.    FOX has recently sought to retaliate against 4Kids for raising lawful claims that it be compensated for FOX's failure to achieve the 90% Network Clearance. For example, in breach of its obligations under the Contract, and after 4Kids demanded a fee reduction from FOX based on FOX's failure to achieve 90% Network Clearance, FOX advised 4Kids that KTTV, a FOX owned and operated station in Los Angeles, the second largest DMA in the United States, was planning to pre-empt for the remainder of the 2007-08 Broadcast Season, 1-1/2 hours of the Block. The first such pre-emption occurred on Saturday, March 29, 2008. In further breach of its obligations under the Contract, FOX has rescheduled that 1-1/2 hours of pre-empted 4Kids' programming to be broadcast at 3:00 am to 4.30 am on Sunday mornings. Since the target audience for 4Kids' programming is children ages 6 through 11, there is no possibility that the pre-empted 4Kids programming will attract viewership during the 3:00 am to 4:30 am time period.

31.    FOX's recent pre-emption is an intentional and malicious breach of its obligations under the Contract and was done in response to 4Kids' lawful demand that it be compensated for FOX's failure to fulfill its contractual obligations.

## COUNT I

### DECLARATORY JUDGMENT

32.    Plaintiff repeats and realleges paragraphs 1 to 31 as if fully set forth herein.

33.   The Contract is a valid and enforceable contract between 4Kids and FOX.

34.   4Kids has performed all of its obligations under the Contract.

35.   4Kids has notified FOX that, in each of the 2002-03 through 2006-07 Broadcast Seasons, FOX has failed to deliver the 90% Network Clearance required by the Contract.

36.   4Kids has further notified FOX that, under paragraph 3(a) of the Contract, 4Kids is entitled to at least an $11.1 million reduction in fees that it already paid FOX for the 2002-03 through 2006-07 Broadcast Seasons, but FOX has notified 4Kids in response that it is FOX's position that 4Kids is entitled to no reduced fee whatsoever.

37.   4Kids has offset $5 million of the $11.1 million reduction in fees to which it is entitled against a $5 million quarterly payment due FOX on April 1, 2008, and 4Kids intends to take another $5 million offset, plus any additional fee reduction to which it may then be entitled, against the next $5 million quarterly payment due FOX on July 1, 2008, and against future quarterly payments that may be due.

38.   There is an actual controversy between the parties concerning the parties' respective legal rights, remedies and obligations under the Contract.

39.   4Kids seeks a declaratory judgment that: (i) FOX has failed to broadcast 4Kids' programming during the licensed block of time on stations broadcasting to at least 90% of United States television households during each of the 2002-03 through 2006-07 Broadcast Seasons pursuant to paragraph 3(a) of the Contract; (ii) under paragraph 3(a) of the Contract, 4Kids is entitled to at least an $11.1 million reduction in fees that it already paid FOX for the 2002-03 through 2006-07 Broadcast Seasons; and (iii) pursuant to paragraph 3 of the Contract,

4Kids is permitted to offset such fees, plus any additional fee reduction to which it may then be entitled, against future amounts owed to FOX.

## COUNT II

### BREACH OF CONTRACT

40.    Plaintiff repeats and realleges paragraphs 1 to 39 as if fully set forth herein.

41.    As a result of FOX's failure to achieve the 90% Network Clearance for each broadcast season from 2002-2003 to 2006-2007, and its failure to broadcast 4Kids programming "in pattern," 4Kids has suffered additional damages in an amount to be proved at trial, but including, among other things, lost advertising revenue and lost merchandising revenue, together with prejudgment interest, costs, disbursements and legal fees.

**WHEREFORE**, plaintiff demands judgment as follows:

On its First Cause of Action, a declaratory judgment that:

a. FOX has failed to broadcast 4Kids' programming during the licensed block of time on stations broadcasting to at least 90% of United States television households during each of the 2002-03 through 2006-07 Broadcast Seasons pursuant to paragraph 3(a) of the Contract;

b. under paragraph 3(a) of the Contract, that 4Kids is entitled to at least an $11.1 million reduction in fees that it already paid FOX for the 2002-03 through 2006-07 Broadcast Seasons; and

c. pursuant to paragraph 3 of the Contract, 4Kids is permitted to offset such fees, plus any additional fee reduction to which it may then be entitled, against future amounts owed to FOX.

On its Second Cause of Action for breach of contract,

     a.    additional damages in an amount to be proved at trial, including lost advertising revenue and lost merchandising revenue, plus prejudgment interest;

     b.    costs, disbursements and reasonable attorneys' fees incurred in connection with the action; and

     c.    Such other and further relief as this Court may deem just and proper.

Dated:    April 24, 2008
          New York, New York

                        KAYE SCHOLER LLP

                        By:
                            Fredric W. Yerman
                            Michael A. Lynn
                      425 Park Avenue
                      New York, NY 10022
                      (212) 836-8000

                      *Counsel for Plaintiff*
                      *4Kids Entertainment, Inc.*

Exhibit A

# FOX BROADCASTING COMPANY AND 4KIDS ENTERTAINMENT, INC.
## SATURDAY MORNING PROGRAMMING BLOCK TIME LICENSE
### MINIMUM TERMS

When signed by the parties below, this term sheet ("Term Sheet") shall confirm the material terms of the agreement between 4Kids Entertainment, Inc. and Fox Broadcasting Company for the Saturday Morning Programming Block.

For the purpose of these terms:

"Block" means the Saturday morning time period commencing at 8:00 am and ending at 11:59:50 am in the Eastern and Pacific time zones and commencing at 7:00 am and ending at 10:59:50 am in the Mountain and Central time zones throughout the Programming Term.

"Children's Program" means a television program that is originally produced and broadcast for an audience of children 12 years old and under.

"FOX" means FOX Broadcasting Company.

"Network" means the national television service operated by FOX.

"Program" means a one-half hour or hour television program that 4Kids Entertainment, Inc., ("Company") supplies, and FOX approves, as permitted herein, for exhibition on the Network inside the Block during the Programming Term (defined below).

1.    Programming Term

Subject to the terms hereof, Company will have the exclusive right to program the Block for four one-year broadcast seasons (each a "Broadcast Season" and collectively the "Programming Term"), commencing on September 14, 2002 of the 2002-2003 Broadcast Season and ending on September 9, 2006 of the 2005-2006 Broadcast Season. Throughout the Programming Term Company shall provide sufficient Programs (meeting all delivery and all other requirements herein) to fill the Block.

2.    Programming Term Extension

a.    FOX grants to Company an option to extend the Programming Term for one Broadcast Season (*i.e.*, the 2006-2007 Broadcast Season).  If Company elects to exercise such option, Company shall deliver written notice of such exercise to FOX on or before December 15, 2005.

b.    If Company exercises the option set forth in Paragraph 2.a., Company shall have an option to extend the Programming Term for one Broadcast Season (*i.e.*, the 2007-2008 Broadcast Season); provided, however, that Company acknowledges that as of the date of this Term Sheet, the 2007-2008 Broadcast Season ends on June 30, 2008, and FOX may or may not extend its agreements with the Stations to make the Broadcast Season a full twelve months.  If Company elects to exercise such option, Company shall deliver written notice of such exercise to FOX on or before December 15, 2006.

c.    If Company exercises both the options set forth in subparagraphs a. and b. above, and FOX elects in its sole discretion to lease the Block for the 2008-2009 Broadcast Season, FOX will so notify Buyer no later than November 1, 2007.  Commencing November 15, 2007 and ending on December 15, 2007 ("Negotiation Term"), Company will have the exclusive right to negotiate with FOX the terms and conditions under which the Programming Term may be extended.  If Buyer and FOX do not reach agreement on or prior to December 15, 2007, then, until March 30, 2008, FOX shall not enter into an agreement with a third party for the rights offered to Company on terms that are more favorable to such third party than the terms of the last offer made by FOX to Company during the Negotiation Term without first offering such terms to Company.  Such negotiation rights and first refusal rights shall be in accordance with FOX's standard terms.

d.    If Company exercises either or both of the options set forth in this Paragraph 2., the additional Broadcast Seasons shall be sometimes called the "Programming Extension Term," in this Term Sheet.

3.  Broadcast Coverage

a.  Reduction in Fee for Loss of National Coverage.  If the average Network clearance for the Block for a Broadcast Season during the Programming Term (and the Programming Extension Term, if applicable) is below 90% of the television households in the U.S. ("U.S. Households") due to causes other than events of force majeure on a Station-by-Station basis but not on a Network-wide basis, pre-emptions for the Sports Programming set forth in paragraph 3.d. below, or Company's failure to deliver Programs, as set forth in this Term Sheet, then the Time Buy Fee for that Broadcast Season shall be an amount equal to the Time Buy Fee for that Broadcast Season, multiplied by a fraction, the numerator of which shall be the actual average percentage of Network clearance achieved and the denominator of which shall be 90 (*e.g.*, if during the 2002-2003 Broadcast Season, Programs are made available to an average of 88% of U.S. Households, then the 2002-2003 Time Buy Fee shall be an amount equal to the 2002-2003 Time Buy Fee multiplied by 88/90).

b.  Reduction in Fee for Network Clearance below 80%.  If the average Network clearance for the Block for a Broadcast Season during the Programming Term (and Extension Term, if applicable) is below 80% of "U.S. Households" due to causes other than events of force majeure on a Station-by-Station basis but not on a Network-wide basis, pre-emptions for the Sports Programming set forth in Paragraph 3.d. below, or Company's failure to deliver programs, as set forth in this Term Sheet, then, in lieu of the reduction set forth in subparagraph a. immediately above, the Time Buy Fee for such Broadcast Season shall be reduced as follows:

(i)  The Time Buy Fee shall be reduced by 11.1% for the first 10% of the reduction in average Network Clearance (i.e., from 90% coverage to 80% coverage); and

(ii)  The Time Buy Fee shall also be reduced by an amount equal to the original Time Buy Fee for that Broadcast Season, multiplied by a fraction, the numerator of which shall be ([80 minus the actual average percentage of Network clearance achieved] multiplied by 2) and the denominator of which shall be 90.

For example, if average Network clearance is 70% for a Broadcast Season, and is not due to any of the listed exclusions, the Time Buy Fee shall be reduced by the sum of 11.1% pursuant to subparagraph (i) above and 22.2% [((80 minus 70) multiplied by 2) divided by 90] pursuant to subparagraph (ii) above, for a total reduction of the Time Buy Fee of 33.3%.

c.      The amount by which any Time Buy Fee is reduced pursuant to this Paragraph 3. shall be deducted from Company's remaining payments due pursuant to Paragraph 5. below, or if such deduction from the remaining payments is insufficient to fully compensate Company for the amount of such reduction, then FOX shall promptly refund in cash to Company the amount that Company was unable to deduct from the remaining payments.

d.      Company acknowledges that in each Broadcast Season FOX may pre-empt the Block or part of the Block for "Sports Programming" without affecting the calculation of Network clearance as follows: up to three Saturdays for FOX telecasts of NFL games, plus up to one Saturday for FOX telecasts of the World Bowl game.  The number of protected pre-emptions set forth in this subparagraph shall be determined by FOX, in its sole discretion, within the limits set forth herein.

e.      FOX will use commercially reasonable efforts to cause the Stations to exhibit the Block.  Notwithstanding anything to the contrary in this Term Sheet, FOX reserves the right to pre-empt the Block, or part of the Block, including without limitation for events of national importance.

f.      If in two consecutive calendar quarters in a Broadcast Season the average Network clearance for the Block during each quarter is (due to causes other than force majeure on a Station-by-Station basis but not on a Network-wide basis, pre-emptions for the Sports Programming set forth in Paragraph 3.d., or Company's failure to deliver Programs as set forth in this Term Sheet) either below 75% of U.S. Households or below 80% of U.S. Household and the Network does not have a Station in one of the ten major television markets other than Atlanta, Georgia (*i.e.*, New York City, Los Angeles, Chicago, Philadelphia, San Francisco, Boston, Dallas, District of Columbia and Detroit) (collectively the "Limits"), Company shall have the option to terminate the agreement between FOX and Company for the Block

as follows.

Within ten (10) business days following the end of any calendar quarter in which the Network clearance is below the Limits, FOX will notify Company thereof. Additionally, FOX shall notify Company of the average Network clearance for U.S. Households for the next consecutive calendar quarter, and if the average Network clearance of U.S. Households is still below the Limits in that consecutive calendar quarter, Company may, at its option, terminate the agreement. If Company desires to terminate the agreement, Company shall provide Network with written notice of termination within thirty (30) days from Company's receipt of Network's notice that the Network clearance for the second of two consecutive calendar quarters was below the Limits. Such termination shall be effective on the date specified by Company in the written notice; provided, however, that such termination shall not be effective earlier than the date that is six (6) months following FOX's receipt of Company's written termination notice unless FOX notifies Company, in writing, that FOX elects a termination date before the end of such six-month period. (For example, FOX were to elect to terminate at the end of the Broadcast Season even though it is less then six months after the date of FOX's receipt of the written termination notice.)

If Company exercises its option to terminate and the agreement terminates as provided in this Paragraph 3.f., Company shall be responsible for the pro-rata proportion of the Time Buy Fee based on the length of time between the beginning of the Broadcast Season in which the termination occurs and the termination date (subject to any adjustment on the same pro-rata basis as provided in subparagraphs a. and b. of this Paragraph 3). If Company's written termination notice is received by FOX in one Broadcast Season but the termination does not occur until after the start of the next Broadcast Season, and if the pro-rata Time Buy Fee for such next Broadcast Season, with any adjustment as set forth in subparagraphs a. and b. above, is insufficient to compensate for Company's losses in advertising revenues as a result of lower CPMs due to Network's clearance being below the Limits in such next Broadcast Season, FOX and Company shall negotiate in good faith a further adjustment to the pro-rata Time Buy Fee to reflect the lower CPMs. For example, if FOX received Company's written termination notice on July 2, 2004, and the termination date were January 1, 2005, and Company's losses in advertising revenues as a result of such lower CPMs

for the 2004-2005 Broadcast Season were not covered by the adjustments to the Time Buy Fee in subparagraphs a. and b. above, the parties would negotiate a further adjustment in good faith for the 2004-2005 Time Buy Fee.

4.    Inventory Split and Retention of Customary Time for FOX and FOX Stations

a.    National and Local Units.  For each Broadcast Season, Company shall have the exclusive right to sell, within the parameters set forth in this Term Sheet, all national advertising units in the Block and to retain the revenue therefrom.  FOX shall retain all local advertising units in the Block for such use as FOX elects in its sole discretion.  The advertising units in the Block are allocated as follows:

| | |
|---|---|
| Advertising Time in Children's Programs (*i.e.*, 10.5 minutes per hour in total) | 64 national :30 units<br>20 local :30 units |
| Advertising Time in All Other Programs (*i.e.*, 14 minutes per hour in total) | 56 national :30 units<br>56 local :30 units |

Company shall bear all responsibility for executing, and all costs incurred in connection with, the sale and use of all national units and for the collection of payments from advertisers.  If any state, federal (including without limitation FCC) or other governmental law, regulation or rule or any other action reduces or otherwise limits the commercial advertising (or other non-program time) that can be used in any or all Children's Programs, then FOX will, notwithstanding anything to the contrary in this Term Sheet or otherwise, be entitled to likewise reduce the national advertising units available to Company in the Block; and to the extent FOX requires such reduction, the Time Buy Fee shall be reduced pro-rata for each Broadcast Season affected thereby.  Company shall indemnify, defend and hold harmless each and every Station from and against any and all claims that the Station has violated the CTA (as defined in subparagraph 8(b) below) to the extent such claim is based on Company exceeding the amount of national

commercial time permitted by FOX in this Term Sheet (as FOX may reduce such amount pursuant to this paragraph).

b.    <u>Promotional Announcements</u>.    Company will have the right to use, for promotional purposes as Company elects, all the time in the Block that is allocated for national promotional use (as set forth in FOX's delivery requirements or formats, or that is otherwise designated by FOX as available for national promotional use); provided, however, that Company may use such time to promote only viewership of the Programs in the Block on the Network or for public service announcements.

c.    <u>Station Identification and Other Customary Network and Station Time</u>. Notwithstanding anything to the contrary in this Term Sheet, FOX shall retain within the Block all time as is needed customarily for the purpose of Network identification and compliance with applicable laws, rules and regulations, including without limitation, station identifications.

5.    <u>Time Buy Fee and Payment Schedule</u>

a.    As consideration for all rights granted to Company hereunder, Company shall pay to FOX a "Time Buy Fee," which shall be a combination of cash and common stock of Company ("Shares") totaling $25,312,500 for each of the 2002-2003 Broadcast Season, the 2003-2004 Broadcast Season, the 2004-2005 Broadcast Season and the 2005-2006 Broadcast Season with the amount of cash and Shares being determined in Company's discretion subject to the following: the total value of Shares issued to FOX for the portion of the Time Buy Fee due FOX for any Broadcast Season shall not exceed $10,312,500 (in other words, FOX will receive at least $15 million in cash). The price of the Shares to be issued to FOX during any calendar quarter would be the average price of Company's stock on the New York Stock Exchange on the twenty (20) trading days immediately preceding the date of issuance of the Shares ("Price").

The Time Buy Fee shall be paid on the basis of the payment schedule set forth in Paragraph 5.b. below.

The Shares issued to FOX shall be subject to the following:

(i)    Voting Rights – FOX shall sign a voting trust agreement providing that all voting rights to the Shares shall be vested in Company until the Shares are sold to the public.

(ii)   Registration – The Shares shall be registered for resale so that the Shares issued to FOX can be immediately sold by FOX as of the date such payment in Shares is made to FOX.

(iii)  If during any three-month period from the date of issue of Shares to FOX, FOX sells any or all of the Shares issued to FOX during such three-month period at a price per share that is less than the Price at which such Shares were issued to FOX Company shall pay FOX an amount equal to the difference between the proceeds FOX would have received had the Shares been sold at the Price at which the Shares were issued and the amount that FOX actually received from the sale of such Shares (the "Shortfall"). Company shall pay to FOX such Shortfall in cash or Shares, at Company's option; provided, however that the Share price for any part of the Shortfall that is paid in Shares would be the average price of Company's stock on the New York Stock Exchange on twenty (20) trading days immediately preceding the date of issuance of the Shares to pay the Shortfall. The net result of the foregoing is that Company guarantees that FOX shall receive not less than an amount equal to the Shares multiplied by the Price as of the date of issuance on any Shares sold by FOX during the three-month period after the issuance of such Shares to FOX. If the Shares issued to FOX increase in value during the period between the date of issuance and the date of FOX's sale of such Shares, FOX shall keep such increase in value. If FOX elects to hold some or all of the Shares issued during any three-month period after the end of the three-month period in which such Shares were issued, FOX shall bear the market risk of owning such Shares after the end of the three-month period in which issued, and Company shall not be liable for any shortfall occurring on sales of such Shares after the end of the three-month period.

The Time Buy Fee shall be subject to adjustment as provided in this Term Sheet.

b.     Company shall pay the Time Buy Fee as follows:

(i)    for the 2002-2003 Broadcast Season: 50% within ten (10) calendar days following the date of the execution of this Term Sheet by the parties with the balance paid in four equal installments of 12.5% on or before September 1, 2002, December 1, 2002, February 1, 2003 and April 1, 2003;

(ii)    for the 2003-2004 Broadcast Season: 50% on or before June 1, 2003, with the balance paid in four equal installments of 12.5% on or before September 1, 2003, December 1, 2003, February 1, 2004; and April 1, 2004;

(iii)    for the 2004- 2005 Broadcast Season: 50% on or before June 1, 2004, with the balance paid in four equal installments of 12.5% on or before September 1, 2004, December 1, 2004, February 1, 2005; and April 1, 2005; and

(iv)    for the 2005-2006 Broadcast Season: 50% on or before June 1, 2005, with the balance paid in four equal installments of 12.5% on or before September 1, 2005, December 1, 2005, February 1, 2006; and April 1, 2006.

For the 2002-2003 Broadcast Season the 50% payment (*i.e.*, the first payment) due shall be in cash with the remaining payments to be made in a combination of cash and Shares, at Company's election.  Beginning with the 2003-2004 Broadcast Season and continuing through all remaining Broadcast Seasons, the 50% payment (*i.e.*, the one due on June 1 of each calendar year) may be paid in cash and Shares, but no less than $7,500,000 of such payment shall be in cash.

c.     The Time Buy Fee for the 2006-2007 Broadcast Season shall be $26,578,125, and for the 2007-2008 Broadcast Season shall be $27,907,031; provided, however, that if the 2007-2008 Broadcast Season ends on June 30, 2008, such Time Buy Fee shall be $22,003,621.  The payment schedule of

the Time Buy Fee for the Broadcast Seasons during the Programming Extension Term shall be at the same intervals as the payment schedule for the 2005-2006 Broadcast Season with the maximum portion of the Time Buy Fee paid to FOX in Shares for any Broadcast Season in the Programming Extension Term shall not to exceed the amount of the Time Buy Fee less $15 million.

6.    Promotion of the Block on the Network

a.    FOX will allocate to Company fifty-two (52) 30-second promotional spots per calendar year on the Network to promote the Programs. Such promotional time will be outside of the Block, at times to be selected by FOX in its sole discretion after taking into account the audience profile desired by Company, but within the exigencies of Network scheduling. If Company elects, FOX shall exhibit half the promotional spots (*i.e.*, 26 spots) on the Network in the period that begins two weeks immediately before the start of the fourth calendar quarter and ends with the end of the fourth calendar quarter. FOX will coordinate with Company with respect to which particular promotional spots should run in each time period designated by FOX for Company's promotional spots.

b.    In addition, for each Broadcast Season, at Company's election, Company may produce at its cost a half-hour program promoting the Programs for that Broadcast Season ("Launch Program"). FOX will exhibit each Launch Program on the Network in Network's prime time, without cost to Company, during the third calendar quarter preceding the applicable Broadcast Season, at a date and time to be selected by FOX in its sole discretion. Each Launch Program shall be produced and delivered by Company pursuant to FOX's then-current delivery requirements for half-hour prime time programs, which delivery requirements include, among other things, local advertising units.

c.    During July and August 2002, FOX will use Fox Kids promotional time to promote Company's Program line-up for the 2002-2003 Broadcast Season at comparable levels to the July and August 2001 promotions on the Fox Kids Network for the 2001-2002 Fox Kids Saturday morning line-up.

7.    FOX Services

FOX, at its cost will provide to Company all technical services necessary to uplink and transmit to the Stations all content in the Block that meets FOX's delivery requirements and other requirements, as set forth herein, and is timely delivered by Company to Network. In addition, FOX will provide to Company pertinent Nielsen data to the extent permissible under FOX's agreement with Nielsen. If FOX is prohibited from sharing such data with Company and Company is required to pay Nielsen for the pertinent data relating to the Block, then FOX and Company shall negotiate in good faith with respect to the amount that FOX shall reimburse to Company for each Broadcast Season during the Programming Term and Programming Term Extension for Company's actual, direct, out of pocket costs for the Nielsen data relating to the Block.

8.    Program Approvals

a.    Approvals and Consultation.  The name(s) of the Block and all marks to be used in connection therewith are subject to FOX's approval, which shall not be unreasonably withheld and will be made in a timely fashion, it being understood that, without limitation to any of FOX's rights in this Term Sheet, FOX will not approve any name and/or mark that includes the name and/or mark of any other programming service. Without limitation to the foregoing, FOX shall have the right to include a presentation credit within the name of the Block (e.g., "FOX Presents...") in such size, style of type, color, placement and form as FOX elects from time to time, in its sole discretion.

b.    Company shall meaningfully consult with FOX as to the Children's Programs and any entertainment television programs intended for a teenage audience (e.g., ABC's After-School Specials) that are intended to be included in the Block. FOX shall have the right to approve or disapprove, in a timely manner, all types of programs not listed in the preceding sentence,

for inclusion in the Block. FOX shall have the right to approve, in a timely manner, all Programs in the Block with respect to FOX's then-current standards and practices, time segment, format and other delivery requirements, clearance policies relating to promotion and advertising and to FOX's other operating policies (as FOX may change any of the foregoing from time to time) ("FOX's Approval Rights"). If FOX disapproves of any Program with respect to any of the above-listed matters, then Company will continue to submit substitutes until such time as FOX has approved Programs sufficient to fill the entire Block. Subject to FOX's right of consultation, FOX's Approval Rights, and to paragraph 4 above, Company shall have the exclusive right to program the Block (including without limitation, Program content and scheduling, and the selection and scheduling of promotional announcements, national commercial units and sweepstakes and promotions), and to produce a Launch Program for each Broadcast Season. If Company requests an adjustment in the arrangement of the segments in FOX's time segment and/or format requirements, FOX will give good faith consideration to such request.

c.      Without limitation to the foregoing, Company may not include in the Block advertisements for: (a) any other video delivery system or distributor (including, without limitation, any broadcast, cable or satellite exhibition service or other multi-channel or single-channel video programming exhibitor or distributor) (each a "Television Service"); or (b) any program or other material that is exhibited on any Television Service. Notwithstanding anything to the contrary in the foregoing, during and after the 2004-2005 Broadcast Season, Company may use up to 30 seconds of national commercial units per week in the Block to advertise specific programs that are being exhibited on a cable or satellite Television Service on a five-consecutive-days-per-week basis and that have been (and may still continue to be) exhibited in the Block; provided that such advertising may not include the day, date or time of such programs; and provided, further that such cable or satellite Television Service promotes the Block and/or Programs in the Block on a *quid-pro-quo* basis. For purposes of this Term Sheet, a Television Service does <u>not</u> include distribution for home viewing by means of NTSC ½ inch VHS and ½ inch Beta products or by means of DVDs.

d.      <u>Legal Compliance and Exhibition Rights</u>. Company shall ensure that all content included in the Block and the Launch Programs and all activities

related thereto (including without limitation, the Programs, promotional and advertising content, promotions and sweepstakes) are in compliance with the 1990 Children's Television Act, as amended ("CTA"), the Children's On-line Privacy Protection Act ("COPPA") and all the applicable laws and governmental rules and regulations. Further, Company shall ensure that FOX shall have all rights necessary to telecast, transmit and exhibit in the United States, its territories and possessions, including Puerto Rico, all Programs and all other content Company provides for inclusion in the Block (including without limitation, national advertisements and promotional content). In addition, Company grants FOX the right to distribute the Block for exhibition on all television stations, and other television exhibition affiliates, licensed to do so by FOX (each a "Station" and collectively "Stations") and on the Fox Net cable service. In accordance with FOX's customary practice, FOX will have the right to permit the Stations and Fox Net to shift the broadcast times of the Block (including without limitation to accommodate pre-emptions and make goods).

9.    Educational Programming

a.    Company will include in the Block at least one-half hour of programming that qualifies as educational programming pursuant to the CTA (a "Core Program") per week throughout each Broadcast Season.

b.    To the extent that Company has or obtains the necessary rights, Company will provide each Station the opportunity to license from a broad selection at least two-and-a-half hours per week of additional Core Programs (each an "Additional Core Program") that are each a half-hour in length. Such Additional Core Programs shall be licensed to the Stations on a "no-cash/barter basis" and shall provide each Station with at least the amount of local commercial units customary in the television syndication industry for this type of programming. Company shall also ensure that the Stations shall have the right to exhibit such Additional Core Programs during the applicable Broadcast Season in any time period outside of the Block that Station elects.

c.    The Core Program and Additional Core Programs shall be of first-class quality, with production values consistent with other programs exhibited on the Network and by other major U.S. television broadcast

networks.10.    Merchandising Participation

If Company's share of the gross revenues it derives from the exploitation of U.S. merchandising rights to the Programs ("Company's Royalties") with respect to each consecutive 12-month period commencing October 1, 2002 and ending on September 30 of the last year of the Programming Term (and the Programming Extension Term, if applicable) exceeds $25 million, Company shall pay FOX an amount equal to 5% of 100% of Company's Royalties in excess of $25 million. Company will pay to FOX the FOX share of Company's Royalties, if any, within 60 days after the close of each calendar quarter.

11.    First Negotiation for Additional Broadcast Rights and Ancillary Rights

To the extent that an entity affiliated with NewsCorp Limited (each an "Entity") is in the business of licensing, exercising or otherwise exploiting any or all ancillary rights to television programs (*e.g.*, home video, publishing, interactive, international television, internet and theatrical rights), and to the extent that Company owns or controls such ancillary rights and seeks to offer any of such ancillary rights to parties that are unaffiliated with Company, and subject to Company's pre-existing commitments, Company shall so notify FOX in writing. FOX shall then have a period of five (5) business days to advise Company whether FOX or an Entity is interested in entering into negotiations with Company to acquire such ancillary rights offered by Company. FOX shall have the right to designate which Entity shall have the right of first negotiation and first refusal with respect to each ancillary right. If FOX or the designated Entity notifies Company that neither FOX nor such designated Entity is interested in negotiating for such ancillary rights offered by Company or if FOX or such designated Entity fails to notify Company within said five (5) business-day period of FOX's/designated Entity's interest in entering into negotiations with Company to acquire such ancillary rights offered by Company, FOX's right of first negotiation shall lapse and Company shall be free to license such ancillary rights to a third party other than FOX or the designated Entity. If FOX or the designated Entity responds within such five (5) business-day period that FOX or the designated Entity is interested in negotiating to acquire such ancillary rights, Company and FOX or such designated Entity shall negotiate exclusively for a period of ten (10) business days the terms by which FOX or such designated Entity shall

acquire such ancillary rights offered by Company. If the parties fail to reach an agreement during such ten (10) business-day period, Company shall be free to negotiate with third parties other than FOX or the designated Entity with respect to the terms and conditions of the acquisition of such ancillary rights offered by Company; provided, however, that Company may not enter into an agreement with any third party on terms less favorable to Company than the last offer proposed to FOX or the designated Entity by Company for the acquisition of such ancillary rights.

12.    Corporate Guarantee

Company shall provide to FOX evidence of its ability to meet its financial commitments throughout the Programming Term and Programming Extension Term, if it becomes applicable. Such evidence shall be in the form satisfactory to FOX. FOX hereby approves as satisfactory evidence of Company's financial ability its filings with the SEC for so long as Company remains a publicly traded company on the New York Stock Exchange or other major U.S. stock exchange.

In addition, throughout the Programming Term and the Programming Extension Term, if applicable, Company shall provide FOX with an irrevocable letter of credit, satisfactory to FOX in its sole discretion, that at all times provides for credit in an amount equal to $25 million. FOX shall bear the cost for maintaining such letter of credit.

If at any time Company fails to pay the Time Buy Fee, or any portion thereof, to FOX on the date such payment is due, FOX may thereafter draw on the letter of credit to recover any and all amounts then due and owing, and, if FOX draws on such letter of credit, Company shall immediately make arrangements with the financial institution providing the letter of credit to increase the amount of the letter of credit to the $25 million. Any failure by Company to maintain the face amount of the letter of credit at $25 million as set forth herein, shall constitute a material breach.

Notwithstanding anything herein to the contrary, if Company has declined to exercise its option to extend the Programming Term, Company shall have the right to make any cash payments due FOX for the last Broadcast Season by permitting FOX to draw down on the letter of credit for the amount of the cash payment designated by Company. In such event, Company shall not be required to increase

the amount of the letter of credit to $25 million during such last Broadcast Season.

13.   Confidentiality

Company and FOX shall keep, and shall each ensure that its respective officers, directors, agents, employees and any third party to whom it discloses any terms of this Term Sheet, the Bid Terms sent to Company by FOX and any other terms included in Company's bid (collectively "Bid") as permitted by this paragraph shall keep secret and confidential the terms of the Bid. Neither Company nor FOX shall, without the prior written consent of the other, disclose the terms of the Bid to any third party (other than to its outside legal and financial representatives). Notwithstanding anything herein to the contrary, the parties acknowledge that both Company and FOX are public companies that are obliged under the securities laws to make public disclosure, from time to time, of material information and that such material information may include certain information contained in this Term Sheet. In the event that either party, in the judgment of its outside SEC counsel, is required to disclose any information contained in this Term Sheet, the disclosing party shall promptly notify the other party in writing. The disclosing party shall provide the other party with the proposed text of any proposed written disclosure regarding information contained in this Term Sheet for comment by the other party. The disclosing party shall make any reasonable changes that the other party may require in any written disclosure of information contained in this Term Sheet, it being understood, however, that the final text of any such disclosure shall be determined by the disclosing party's outside SEC counsel based on the disclosure requirements of the securities laws. FOX and Company shall mutually approve a press release to announce this agreement.

14.   Formal Agreement

The parties shall enter into a formal agreement, but until such time as such formal agreement is executed this Term Sheet and the provisions customarily included in FOX's agreements of this type (including without limitation, insurance, indemnification, audit rights, representations and warranties, etc.) shall constitute the agreement between the parties.

Agreed and accepted this 18th day of January 2002.

4KIDS ENTERTAINMENT, INC.                FOX BROADCASTING COMPANY

By: _____           By: _____

Its: _____          Its: _President_____
                                             Network Business Operations

March 2, 2006

Mr. Ed Wilson
Fox Broadcasting Company
10201 West Pico Blvd
Los Angeles, CA 90053

Re:  Fox-4Kids Term Sheet Amendment

Dear Ed:

Reference is made to the Fox Broadcasting Company ("FOX") and 4Kids Entertainment, Inc. ("Company") Saturday Morning Programming Block Time License Minimum Terms dated as of January 18, 2002 ("Term Sheet") as amended on December 9, 2005 and January 31, 2006.

FOX and Company hereby agree to amend the Term Sheet as follows:

1. Paragraph 2 of the Term Sheet is hereby deleted in its entirety and is replaced by the following:

"a. Company hereby agrees to extend the Programming Term until September 8, 2008. In consideration of the extension of the Programming Term, Company shall pay FOX a "Time Buy Fee" of $20 million in cash for the 2006-2007 Broadcast Season and $20 million in cash for the 2007-2008 Broadcast Season. The "Time Buy Fee" shall be payable in accordance with the following payment schedule:

| DUE DATE | PAYMENT |
| --- | --- |
| October 1, 2006 | $5,000,000 |
| January 5, 2007 | $5,000,000 |
| April 1, 2007 | $5,000,000 |
| July 1, 2007 | $5,000,000 |
| October 1, 2007 | $5,000,000 |
| January 5, 2008 | $5,000,000 |
| April 1, 2008 | $5,000,000 |
| July 1, 2008 | $5,000,000 |

b. FOX shall have the option but not the obligation to lease the Block for the 2008-2009 Broadcast Season. If FOX elects to lease the Block for the 2008-2009 Broadcast Season, FOX shall be required to lease the Block to Company in accordance with the provisions of this Paragraph 2.b.

FOX shall notify Company in writing by no later than August 31, 2007 regarding whether FOX intends to lease the Block for the 2008-2009 Broadcast Season. If FOX notifies Company that FOX will be leasing the Block, Company shall be obliged to lease the Block from FOX for the 2008-2009 Broadcast Season in accordance with the terms and conditions of the Term Sheet (as amended by this letter amendment) except that



Company shall pay FOX a "Time Buy Fee" of $20 million which shall be payable in accordance with the following payment schedule:

| DUE DATE | PAYMENT |
| --- | --- |
| October 1, 2008 | $5,000,000 |
| January 5, 2009 | $5,000,000 |
| April 1, 2009 | $5,000,000 |
| July 1, 2009 | $5,000,000 |

The Programming Term shall be extended until September 7, 2009.

c. If FOX elects in its sole discretion to lease the Block for the 2009-2010 Broadcast Season, FOX will so notify Company by no later than November 1, 2008. Commencing on November 15, 2008 and ending on December 15, 2008 ("Negotiation Term"), Company will have the exclusive right to negotiate with FOX the terms and conditions under which the Programming Term may be extended. If Company and FOX do not reach agreement on or prior to December 15, 2008, then, until March 30, 2009, FOX shall not enter into an agreement with a third party for the rights offered to Company on terms that are more favorable to such third party than the terms of the last offer made by FOX to Company during the Negotiation Term without first offering such terms to Company. Such negotiation rights and first refusal rights shall be in accordance with FOX's standard terms.

2. Paragraph 3 of the Term Sheet is hereby amended by adding the following new provision Paragraph 3.g.:

"g. Company acknowledges that in markets where Fox Television Stations ("FTS") owns and operates two stations ("Duopoly Markets"), FOX shall have the right to move the Block to the non-Fox network station owned by FTS ("NFN Station") subject to the following conditions:

(i) FOX shall, in each instance, consult with Company on the timing of any move to an NFN Station, and shall provide at least 90 days notice to Company to allow for minimal viewer disruption. Unless otherwise agreed to in writing by Company, FOX shall not move the Block to an NFN Station during the "hard eight" advertising period between October 1st and December 20th.

(ii) Fox agrees to use reasonable commercial efforts and work in consultation with Company to maximize viewer awareness of the station change to the NFN Station.

(iii) If the day and time period that the Block is scheduled to be telecast on the NFN Station is different from the day and time period that the Block is telecast on the Fox network station, FOX and Company shall mutually agree on the day and time period that the Block will be telecast on the NFN Station.

(iv) If FTS sells any NFN Station to which the Block has been moved or FTS is no longer controlling the day or time period in which the Block is airing on such NFN Station such that the Block is no longer telecast, FOX shall be required, at no expense



to Company, to provide Company with a comparable clearance for the Block in such Duopoly Market.

(v) FOX shall notify Nielsen that the FOX network has shifted affiliations for those time periods in each of those Duopoly Markets where the Block has been moved to an NFN Station so that Nielsen includes such NFN Station in the computation of the weekly network ratings (i.e, non-syndication) for the Block on the FOX network.

Notwithstanding anything herein to the contrary, if any transfer of the Block from a FOX network station to an NFN Station results in the Block not qualifying for the weekly Nielsen ratings of the FOX network or the Block not receiving a rating for one or more NFN Stations, FOX shall not have the right to move the Block to such NFN Station without obtaining Company's prior written approval.

3. Paragraph 4 of the Term Sheet is hereby amended by adding the following new provision Paragraph 4.d.

"d. In the event that Company intends to program any teen programming in the Block during the Programming Term, then Company shall notify FOX thereof in writing not later than 60 days ("New Programming Notice") prior to programming such teen programming. FOX and Company agree to negotiate in good faith for such period of time, not to exceed 30 days from the time of FOX's receipt of a New Programming Notice, regarding the terms pursuant to which such teen programming may be programmed (which terms will include among other things that, notwithstanding anything to the contrary, and without limitation to any other terms, herein, the commercial split for such teen programming shall be as follows: FOX will retain two minutes per broadcast half-hour and Company will retain seven minutes per broadcast half-hour as well as the balance of the promotional time and programming time for such broadcast half-hour in the Block. It is understood and agreed that Company will not program any teen programming in the Block except as agreed to in writing by Company and FOX.

4. Paragraph 5.a. of the Term Sheet is hereby deleted in its entirety and is replaced by the following:

"a. As consideration for all rights granted to Company hereunder, Company shall pay to FOX a "Time Buy Fee," in cash of $25,312,500 for each of the 2002-2003 Broadcast Season, the 2003-2004 Broadcast Season, the 2004-2005 Broadcast Season and the 2005-2006 Broadcast Season. The Time Buy Fee shall be paid on the basis of the payment schedule set forth in Paragraph 5.b. below. The Time Buy Fee shall be subject to adjustment as provided in this Term Sheet".

5. Paragraph 5.c. of the Term Sheet is hereby deleted in its entirety.

6. Paragraph 7 of the Term Sheet is hereby amended by adding the following sentence at the end thereof:

"For the avoidance of doubt, during the extension of the Programming Term provided for pursuant to this amendment, FOX will provide the Company, at no cost to the Company, with the following services: Nielsen data, commercial integration, access to the STBS billing system, transmission to the network and such other services that FOX has provided to Company from the 2002 -- 2003 Broadcast Season to date.



7. Paragraph 12 of the Term Sheet is hereby deleted in its entirety.

Except as specifically amended herein, the Term Sheet, and all other terms and conditions therein, remain in full force and effect. Capitalized terms not otherwise defined herein shall have the meanings set forth in the Term Sheet. "

Please confirm that the foregoing satisfactorily sets forth our agreement by signing the enclosed copy of this letter and returning it to me.

Sincerely yours,

4Kids Entertainment, Inc.

By: _____

March 2, 2006

Agreed to and Accepted:

Fox Broadcasting Company

By: _____

March 14, 2006





1414 Avenue of the Americas, New York, NY 10019 • Tel: 212.758.7666 • Fax: 212.593.0439

Samuel R. Newborn, Esq.
Executive Vice President
Business Affairs, General Counsel
snewborn@4kidsent.com

March 30, 2006

Ed Wilson
Fox Broadcasting Company
Network Business Operations
10201 West Pico Boulevard
Bldg. 100, RM 4570
Los Angeles, CA 90035

Re: <u>4Kids Prime Time Launch Program</u>

Dear Ed:

I refer you to the Term Sheet between Fox Broadcasting Company ("Fox") and 4Kids Entertainment, Inc. ("4Kids") dated as of January 18, 2002, as amended on December 9, 2005, January 31, 2006 and March 2, 2006 (collectively, the "Term Sheet").

This letter confirms the following:

(i) In consideration of the payment by Fox to 4Kids of $250,000, 4Kids has agreed that 4Kids will not produce, and Fox will not be required to exhibit, a Launch Program for the 2005-2006 Broadcast Season.

(ii) Paragraph 6.b. of the Term Sheet is hereby deleted in its entirety.

Except as amended hereby, the Term Sheet remains in full force and effect. Capitalized terms not otherwise defined in this letter shall have the meanings set forth in the Term Sheet.

Please confirm your agreement to the foregoing by signing the enclosed copy of this letter and returning it to me.

Fox should also make arrangements to pay 4Kids the $250,000 that is due (see attached invoice).

Sincerely yours,
4Kids Entertainment, Inc.

By _____

Agreed to accepted:
Fox Broadcasting Corporation

By _____

I:snewborn\work\leisure\fox\wilson.Prime Time Special Ltr Agmt

the Time Buy Fee for the Broadcast Seasons during the Programming Extension Term shall be at the same intervals as the payment schedule for the 2005-2006 Broadcast Season with the maximum portion of the Time Buy Fee paid to FOX in Shares for any Broadcast Season in the Programming Extension Term shall not to exceed the amount of the Time Buy Fee less $15 million.

6.    Promotion of the Block on the Network

a.    FOX will allocate to Company fifty-two (52) 30-second promotional spots per calendar year on the Network to promote the Programs. Such promotional time will be outside of the Block, at times to be selected by FOX in its sole discretion after taking into account the audience profile desired by Company, but within the exigencies of Network scheduling. If Company elects, FOX shall exhibit half the promotional spots (*i.e.*, 26 spots) on the Network in the period that begins two weeks immediately before the start of the fourth calendar quarter and ends with the end of the fourth calendar quarter. FOX will coordinate with Company with respect to which particular promotional spots should run in each time period designated by FOX for Company's promotional spots.

b.    In addition, for each Broadcast Season, at Company's election, Company may produce at its cost a half-hour program promoting the Programs for that Broadcast Season ("Launch Program"). FOX will exhibit each Launch Program on the Network in Network's prime time, without cost to Company, during the third calendar quarter preceding the applicable Broadcast Season, at a date and time to be selected by FOX in its sole discretion. Each Launch Program shall be produced and delivered by Company pursuant to FOX's then-current delivery requirements for half-hour prime time programs, which delivery requirements include, among other things, local advertising units.

*[handwritten margin note:] Intentionally Deleted*