REED SMITH LLP
John P. Hooper
Eric F. Gladbach
Wallace B. Neel
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Defendant*
*Fox Broadcasting Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
4KIDS ENTERTAINMENT, INC.,

                        Plaintiff,

- against -

FOX BROADCASTING COMPANY,

                        Defendant.
-----------------------------------------------------------------x

No. 08-CV-4865 (GBD) (AJP)

**ANSWER AND COUNTERCLAIM**

      Defendant Fox Broadcasting Company ("Fox"), by and through its attorneys Reed Smith LLP, answers the Complaint (the "Complaint") of Plaintiff 4Kids Entertainment Inc. ("4Kids") as follows:

      1.     Admits that the Complaint alleges causes of action for breach of contract and a declaratory judgment, but denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of the Complaint and therefore denies them, and respectfully refers the Court to the January 18, 2002 contract including any and all applicable written and/or oral amendments (collectively, the "Contract") between Fox and 4Kids for its complete and correct terms.

2. Denies the nature of the allegations contained in Paragraph 2 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and respectfully refers the Court to the Contract for its complete and correct terms.

3. Denies the nature of the allegations contained in Paragraph 3 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and respectfully refers the Court to the Contract for its complete and correct terms.

4. Denies the nature of the allegations contained in Paragraph 4 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and respectfully refers the Court to the Contract for its complete and correct terms.

5. Denies the nature of the allegations contained in Paragraph 5 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and affirmatively states that Fox has fully complied with the Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

6. Denies the nature of the allegations contained in Paragraph 6 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement except admits that Fox has notified 4Kids that 4Kids is not entitled to any reduction of the fees it owed and owes to Fox under the Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms, and

7. Denies the nature of the allegations contained in Paragraph 7 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement, and affirmatively alleges that 4Kids is in breach of the Contract as a result of its failure to pay $5 million due to Fox under that Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

8. Denies the nature of the allegations contained in Paragraph 8 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement including its subparts, and respectfully refers the Court to the Contract for its complete and correct terms.

9. Denies the nature of the allegations contained in Paragraph 9 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and affirmatively states that Fox has fully complied with the Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

10. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint and therefore denies them.

11. Admits the allegations of the first sentence of Paragraph 11 of the Complaint, but denies the allegations of the second sentence of Paragraph 11 of the Complaint.

12. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint, except admits that Fox is licensed to do business in New York State.

13. Neither admits nor denies the allegations contained in Paragraph 13 of the Complaint because the CPLR are not applicable in federal court and the allegations constitute legal conclusions to which no response is required.

14. Denies the allegations contained in Heading "A" of the Complaint and respectfully refers the Court to the Contract for its full and complete terms.

15. Admits the allegations contained in Paragraph 14 of the Complaint and respectfully refers the Court to the Contract for its complete and correct terms.

16. Admits the allegations contained in Paragraph 15 of the Complaint and respectfully refers the Court to the Contract for its complete and correct terms.

17. Denies the nature of the allegations contained in Paragraph 16 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and respectfully refers the Court to the Contract for its complete and correct terms.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint therefore denies them, and respectfully refers the Court to the Contract for its complete and correct terms.

19. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint therefore denies them, and respectfully refers the Court to the Contract for its complete and correct terms.

20. Denies the nature of the allegations contained in the first sentence of Paragraph 19 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and affirmatively states that Fox has fully complied with the terms of the Contract. Fox denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the remainder of Paragraph 19 of the Complaint therefore denies them. As to all allegations of Paragraph 19 of the Complaint, Fox respectfully refers the Court to the Contract for its complete and correct terms.

21. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint therefore denies them, and respectfully refers the Court to the Contract for its complete and correct terms.

22. Denies the nature of the allegations of the first sentence contained in Paragraph 21 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement, and denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 21 of the Complaint therefore denies them. As to

all allegations of Paragraph 21 of the Complaint, Fox respectfully refers the Court to the Contract for its complete and correct terms.

23. Denies the nature of the allegations contained in Paragraph 22 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and respectfully refers the Court to the Contract for its complete and correct terms.

24. Denies the nature of the allegations contained in Paragraph 23 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and respectfully refers the Court to the Contract for its complete and correct terms.

25. Denies the allegations contained in Heading "B" of the Complaint.

26. Denies the nature of the allegations contained in Paragraph 24 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and affirmatively states that Fox has fully complied with the Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

27. Denies the allegations contained in Paragraph 25 of the Complaint and affirmatively states that Fox has fully complied with the Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

28. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint, and affirmatively states that Fox has fully complied with the Contract. Furthermore, as to all allegations of Paragraph 26 of the Complaint, Fox respectfully refers the Court to the Contract for its complete and correct terms.

29. Denies the nature of the allegations contained in the first sentence of Paragraph 27 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement. Fox denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 27 of the Complaint therefore denies

5

them. Fox denies the allegations contained in the third sentence of Paragraph 27 of the Complaint. Fox denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in the fourth and fifth sentences of Paragraph 27 of the Complaint therefore denies them. As to each allegation of Paragraph 27 of the Complaint, Fox respectfully refers the Court to the Contract for its complete and correct terms.

30. Denies the nature of the allegations contained in Paragraph 28 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and affirmatively states that Fox has fully complied with the Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

31. Denies the nature of the allegations contained in Paragraph 29 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement, and affirmatively alleges that 4Kids is in breach of the Contract as a result of its failure to pay $5 million due to Fox under that Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

32. Denies the nature of the allegations contained in Paragraph 30 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and affirmatively states that Fox has fully complied with the Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

33. Denies the nature of the allegations contained in Paragraph 31 of the Complaint to the extent that they attempt to characterize the full terms of the parties' agreement and affirmatively states that Fox has fully complied with the Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

34. No response is required to paragraph 32 of the Complaint. To the extent a response is required, Fox incorporates its responses to Paragraphs 1-31 as if set forth herein in full.

35. Admits the allegations of Paragraph 33 of the Complaint.

36. Denies the allegations of Paragraph 34 of the Complaint.

37. Denies the allegations contained in Paragraph 35 of the Complaint.

38. Denies the allegations contained in Paragraph 36 of the Complaint to the extent that the allegations lack specificity as to the time and scope of the alleged notification.

39. Admits that 4Kids has not paid a $5 million payment which was scheduled to be paid on or before April 1, 2008, and states that Fox has no knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second sentence of Paragraph 37 of the Complaint therefore denies them, and affirmatively alleges that 4Kids is in breach of the Contract as a result of its failure to pay $5 million due to Fox under that Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

40. Paragraph 38 of the Complaint contains conclusions of law to which no response is required. To the extent that an answer is required, the allegations are denied.

41. Denies the allegations contained in Paragraph 39 and all subparts of the Complaint, and affirmatively alleges that 4Kids is in breach of the Contract as a result of its failure to pay $5 million due to Fox under that Contract. Furthermore, Fox respectfully refers the Court to the Contract for its complete and correct terms.

42. No response is required to paragraph 40 of the Complaint. To the extent a response is required, Fox incorporates its responses in Paragraphs 1-41 as if set forth herein in full.

43. Denies the allegations contained in Paragraph 41 of the Complaint and respectfully refers the Court to the Contract for its complete and correct terms.

44. To the extent that a response is required to the "Wherefore" paragraph and subparagraphs, Fox denies all allegations therein.

45. To the extent that any allegation of the Complaint other than those identified above requires a response, Fox denies all such allegations.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

46. The Complaint fails to set forth facts sufficient to state a claim upon which relief may be granted against Fox and further fails to state facts sufficient to entitle 4Kids to the relief sought, or to any other relief whatsoever from Fox.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

47. 4Kids is estopped and barred from the recovery of any damages which 4Kids may have sustained, which Fox continues to deny.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

48. 4Kids has waived any and all claims for relief.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

49. 4Kids' claims are barred in whole or in part by its failure to mitigate its damages.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

50. 4Kids' claims are barred in whole or part by its ratification of Fox's conduct pursuant to the terms of the Contract. Therefore, 4Kids is barred from the recovery of any damages.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

51. 4Kids' claims are barred in whole or part by the applicable statutes of limitation or repose, and/or by the doctrine of laches.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

52. 4Kids' claims are barred in whole or part because Fox performed in accordance with the Contract and Fox at all times acted in good faith.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

53. 4Kids' claims are barred in whole or part by the doctrine of accord and satisfaction.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

54. 4Kids' claims are barred in whole or part because Fox did not intend to harm 4Kids.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

55. 4Kids' is barred from the recovery of any damages which 4Kids may have sustained, which Fox continues to deny, by the doctrine of offset.

### AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

56. 4Kids' claims are barred in whole or part because 4Kids is in breach of the Contract.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

57. 4Kids' claims are barred in whole or part because 4Kids has prevented and/or has stated its intention to prevent Fox from performing under the Contract.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

58. Fox reserves the right to assert additional affirmative defenses, at such time, and to such extent as warranted by discovery and factual developments in this case.

## COUNTERCLAIMS

1.  For its Counterclaims against 4Kids, Fox alleges as follows:

**Summary of Counterclaims**

2.  For the last six "Broadcast Seasons," from September 14, 2002 until September 9, 2008, 4Kids and Fox have been engaged in a business relationship in which Fox has broadcast 4Kids' programming through its nationwide "Network" of television stations. The initial written contract was signed on or about January 18, 2002, and provided that 4Kids would purchase from Fox the right to broadcast children's programming in each of four one-year "Broadcast Seasons" between September 14, 2002 and September 9, 2006. A true and correct copy of the January 28, 2002 contract is annexed hereto as Exhibit A.

3.  The basic terms of the Contract were that 4Kids would pay Fox in excess of $25 million per Broadcast Season for four years, and that Fox would broadcast 4Kids' programming into at least 90% of the television households in the United States. If Fox's broadcast "clearance" rate fell below 90% in any single Broadcast Season, 4Kids would be entitled to a refund pursuant to the terms of the Contract.

4.  During the first four Broadcast Seasons of the contract, from September 12, 2002 to approximately September 12, 2006, 4Kids never claimed that Fox had fallen short of the 90% threshold. Indeed, 4Kids was so satisfied with Fox's performance that, as the expiration of the initial four-year contract neared, 4Kids negotiated and executed a two-year extension of the contract, as reflected in an agreement which the parties signed on or about March 2, 2006. At no point during the negotiation and execution of that extension did 4Kids ever claim that the Fox's clearance rate in the preceding four Broadcast Seasons was below 90%, nor did 4Kids make any attempt to refine the Contract's "clearance" calculation, nor did 4Kids ever seek a "refund" based upon Fox's purported clearance rate of less than 90%.

5. In or around October 2007, 4Kids announced a deal with the CW television network ("CW") under which CW would serve as the programming outlet for 4Kids' programming. Upon information and belief, after executing the contract with CW, 4Kids no longer wanted to continue its contractual relationship with Fox because it was less commercially attractive to 4Kids than the agreement with CW. Upon information and belief, 4Kids therefore sought a reason to avoid its remaining payment obligations under the Contract with Fox.

6. Within three months of announcing an agreement with CW, 4Kids suddenly declared that Fox had actually been in "breach" of the Contract during each and every one of the preceding Broadcast Seasons due to Fox's alleged failure to reach the 90% threshold in each of those Broadcast Seasons.

7. 4Kids failed to pay a $5 million installment of the fee that was due on April 1, 2008, and claimed that it was entitled to keep that money to "offset" the refund that it was now claiming a right to as a result of its belated—and false—claim that Fox had not reached at least 90% of U.S. television households during the preceding five-plus Broadcast Seasons.

8. Furthermore, 4Kids informed Fox that it intended to refuse to pay another $5 million installment due to Fox in July 2008 as a further "offset."

9. Fox has, in fact, broadcasted 4Kids' programming to at least 90% of U.S. television households in each and every Broadcast Season of the relationship in full compliance with the terms of the Contract. Indeed, given 4Kids' failure to ever allege any "failure" by Fox on this point during a five-year course of dealing in which 4Kids paid Fox over $100 million, it strains credulity for 4Kids to assert otherwise.

10. 4Kids' belated attempt to manufacture a "breach" that extends back to the inception of the Contract is a transparent attempt to avoid paying the remaining $10 million it owes to Fox for the current Broadcast Season. It is 4Kids, not Fox, that has breached the

Contract, through its unjustified refusal to pay $10 million in remaining fees owed to Fox for the 2007-2008 Broadcast Season.

**Jurisdiction Is Proper Before This Court**

11. Upon information and belief, 4Kids is a corporation organized under the laws of the State of New York with its principal place of business in New York County.

12. Fox is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California.

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action involves citizens of different states and the amount-in-controversy is in excess of $75,000.

14. This Court has personal jurisdiction over the parties because 4Kids conducts business operations from their offices in New York County and Fox conducts business in New York County.

15. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(a).

**The Initial Four-Year Contract**

16. Under the initial four-year term of the contract, 4Kids agreed to provide Fox with sufficient children's programming to fill a four-hour "Block" of time, which was defined as "the Saturday morning time period commencing at 8:00 am and ending at 11:59:50 am in the Eastern and Pacific time zones and commencing at 7:00 am and ending at 10:59:50 am in the Mountain and Central time zones throughout the Programming Term." Exhibit A, at 1.

17. Under the initial four-year contract, 4Kids further agreed to pay Fox in excess of $25 million per Broadcast Season as a "Time Buy Fee," as specified in the Contract.

18. Fox, in turn, agreed that if its "average Network clearance for the Block for a Broadcast Season . . . is below 90% of the television households in the U.S. ('U.S. Households')

12

due to causes other than force majure on a Station-by-Station basis, but not on a Network-wide basis, pre-emptions for Sports Programming, or [4Kids]'s failure to deliver Programs," then 4Kids would be entitled to a refund of a pro rata portion of the Time Buy Fee for that Broadcast Season based upon a formula set forth in the Contract. Exhibit A at 3.

19.  The Contract provided that Fox would use "commercially reasonable efforts" to convince its affiliate stations to broadcast 4Kids' programming. Exhibit A at 4.

20.  The Contract further provided that "[i]n accordance with FOX's customary practice, FOX will have the right to permit the Stations and FOX Net to shift the broadcast times of the Block (including without limitation to accommodate pre-emptions and make goods)." Exhibit A at 13.

21.  At the outset of the Contract, 4Kids was informed that several stations would exhibit 4Kids' programming "out of pattern." 4Kids did not object to this broadcasting arrangement, nor did it claim or suggest that any "out of pattern" broadcasting would not count toward Fox's clearance requirements under the Contract.

22.  On those occasions that Fox was required to preempt 4Kids' programming, Fox's practice was to negotiate a "make good" broadcast with 4Kids, which meant that the regularly-scheduled 4Kids programming would be exhibited at a different time. Fox communicated those "make goods" to 4Kids on a weekly basis throughout the contract term, and routinely worked with 4Kids and the preempting station(s) to ensure that 4Kids was satisfied with the proposed make good broadcast time. 4Kids was actively involved in that process of negotiating and selecting the optimal available make good times, and never took the position that make good broadcasts did not count toward Fox's 90% clearance rate.

23.  Moreover, within six weeks of the effective date of the contract, 4Kids agreed that it would be acceptable if Fox broadcasted 4Kids' programming in the Pacific time zone one hour

13

earlier (i.e., between 7 a.m. and 11 a.m. Pacific Time) because, among other reasons, the time difference between the east and west coasts would result in an inordinate number of pre-emptions for sporting events. Thus, during nearly the entire first four years of the contract, Fox has broadcast 4Kids' programming between 7 a.m. and 11 a.m. in portions of the Pacific time zone, and 4Kids has never (until now) declared that Fox's clearance rate was below 90%.

**The Two-Year Extension of the Contract**

24. On or about March 2, 2006, 4Kids and Fox executed an amendment (the "March 2006 Amendment") in which they agreed to extend the term of the Contract by two Broadcast Seasons, until September 2, 2008 at a rate of $20 million per Broadcast Season. A true and correct copy of the March 2006 Amendment is annexed hereto as Exhibit B.

25. Notably, despite the fact that 4Kids was aware of (i) Fox's practices concerning the use of "make good" broadcasts, and (ii) the exhibition of 4Kids' programming in portions of the Pacific time zone one hour earlier than the period stated in the Contract's definition of the "Block," 4Kids failed to raise any complaint during the negotiation and execution of the March 2006 Amendment that Fox's "clearance" rate for 4Kids' programming during the first four Broadcast Seasons had fallen short of the 90% threshold.

26. The 2006 Amendment permitted 4Kids to pay the Time Buy Fee in installments and set forth an agreed-upon payment schedule, *viz*.:

> [4Kids] hereby agrees to extend the Programming Term until September 8, 2008. In consideration of the extension of the Programming Term, Company shall pay FOX a "Time Buy Fee" of $20 million in cash for the 2006-2007 Broadcast Season. The "Time Buy Fee" shall be payable in accordance with the following payment schedule:
>
> | DUE DATE | PAYMENT |
> | --- | --- |
> | October 1, 2006 | $5,000,000 |
> | January 1, 2007 | $5,000,000 |
> | April 1, 2007 | $5,000,000 |
> | July 1, 2007 | $5,000,000 |

|  |  |
|---|---|
| October 1, 2007 | $5,000,000 |
| January 1, 2008 | $5,000,000 |
| **April 1, 2008** | **$5,000,000** |
| **July 1, 2008** | **$5,000,000** |

Exhibit B, March 2006 Amendment, at 1 (emphasis added).

**4Kids Belatedly Declares that Fox Has Been in "Breach" For Nearly Six Years**

27.     In early October 2007, 4Kids announced that it had signed a contract with CW under which CW would broadcast 4Kids programming.

28.     Upon information and belief, with the CW agreement in place, the Contract with Fox became commercially less attractive to 4Kids, and 4Kids decided to attempt to avoid paying the remaining amounts it owes to Fox under the Contract.

29.     In nearly six years of performance under the Contract, Fox has always provided 4Kids with data concerning the clearance rate, and 4Kids has never claimed that Fox's clearance rate was below 90%.

30.     However, 4Kids has now claimed that Fox has never provided 4Kids with a 90% clearance rate. Thus, 4Kids alleges that despite the facts that (i) 4Kids performed under the Contract for nearly 6 years without ever claiming a breach; (ii) 4Kids paid Fox well over $100 million in Time Buy Fees during that period; and (iii) Fox permitted 4Kids to renew the agreement in March 2006 based in large part upon Fox's reliance on the good faith course of dealing between the parties, 4Kids has now suddenly realized that Fox has been in breach all along, and that 4Kids is therefore entitled to $11.2 million as a pro rata refund based upon "breaches" dating back to 2002.

31.     Furthermore, 4Kids failed to pay Fox a $5 million installment of the Time Buy Fee for the current Broadcast Season which was due on April 1, 2008. 4Kids claimed that it was entitled to "offset" that amount against the belatedly-declared "refund" it is allegedly owed.

15

32.  4Kids also communicated to Fox in writing that it intends to withhold payment of a scheduled $5 million payment on July 1, 2008, again, as a "refund."

33.  4Kids' belated declaration that Fox did not meet the 90% clearance rate is spurious and false, as is obvious from the surrounding circumstances. 4Kids' calculation is wrong both under the plain text of the Contract and under the parties' course of dealing.

### AS AND FOR A FIRST COUNTERCLAIM AGAINST 4KIDS
#### (Breach of Contract)

34.  Fox reasserts and realleges each and every paragraph of the Counterclaims as though fully set forth herein.

35.  The Contract existed between Fox and 4Kids.

36.  The Contract was supported by consideration.

37.  Fox performed its obligations under the Contract.

38.  4Kids breached the Contract by failing to comply with or perform the applicable terms, covenants, obligations and conditions

39.  4Kids breached the Contract by failing to pay a $5,000,000 (FIVE MILLION DOLLAR) payment which became due and owing on April 1, 2008.

40.  As a direct result of 4Kids's breach of the Contract, Fox has been damaged in an amount to be determined at trial, but in excess of $5,000,000 (FIVE MILLION DOLLARS).

### AS AND FOR A SECOND COUNTERCLAIM AGAINST 4KIDS
#### (Anticipatory Breach of Contract)

41.  Fox reasserts and realleges each and every paragraph of the Counterclaims as though fully set forth herein.

42.  4Kids has definitely and finally communicated to Fox in writing its intention to forgo performance of the remainder of its contractual obligations under the Contract.

43. 4Kids has definitely and finally communicated to Fox in writing its intention to refuse to pay a $5,000,000 (FIVE MILLION DOLLAR) payment which is scheduled to become due and owing on July 1, 2008.

44. Fox was ready, willing, and able to perform its obligations under the Contract at all times.

45. Fox has continued to perform its obligations under the Contract since April 1, 2008, despite 4Kids' failure to pay the $5,000,000 (FIVE MILLION DOLLAR) payment which became due and owing on April 1, 2008.

46. As a direct result of 4Kids's anticipatory breach of the Contract, Fox has been damaged in an amount to be determined at trial, but in excess of $5,000,000 (FIVE MILLION DOLLARS).

### AS AND FOR A THIRD COUNTERCLAIM AGAINST 4KIDS
### (Quantum Meruit)

47. Fox reasserts and realleges each and every paragraph of the Counterclaims as though fully set forth herein.

48. Fox supplied 4Kids with broadcasting time that has aided and enriched 4Kids.

49. 4Kids has obtained the benefit of Fox broadcasting time and has failed and/or refused to pay for said broadcasting time.

50. By virtue of the foregoing, 4Kids is liable in *quantum meruit* for the amount of the reasonable value of the broadcasting time.

### AS AND FOR A FOURTH COUNTERCLAIM AGAINST 4KIDS
### (Unjust Enrichment)

51. Fox reasserts and realleges each and every paragraph of the Counterclaims as though fully set forth herein.

52. 4Kids has derived and continues to derive substantial revenue and benefit from its use of Fox's airtime under the Contract.

53. It would be against equity and good conscience to allow 4Kids to retain the substantial revenues and profits it has realized through its use of Fox's airtime for which it has refused and failed to pay.

54. 4Kids has been unjustly enriched by its use of said airtime in violation of its obligations under the Contract.

55. Fox lacks an adequate remedy at law.

### AS AND FOR A FIFTH COUNTERCLAIM AGAINST 4KIDS
#### (Declaratory Judgment)

56. Fox reasserts and realleges each and every paragraph of the Counterclaims as though fully set forth herein.

57. Fox is entitled to a declaration that 4Kids's failure and refusal to pay the $5 million due and owing to Fox on April 1, 2008 constitutes a breach of its obligations under the Contract.

58. Fox is entitled to a declaration that 4Kids's statement that it does not intend to pay the $5 million due and owing to Fox on July 1, 2008 constitutes an anticipatory breach of its obligations under the Contract.

**WHEREFORE,** defendant demands judgment as follows:

A. Dismissing 4Kids's Complaint against Fox with prejudice and entering final judgment against 4Kids;

B. Denying 4Kids's request for a money judgment, accounting, interest, costs, attorneys' fees, and any other relief against Fox;

C.  Declaring that 4Kids has breached the Contract and has anticipatorily breached the Contract;

D.  Awarding Fox all costs, expenses, and attorneys' fees incurred in defending against 4Kids's claims;

E.  Awarding Fox all damages to which it is entitled under the Counterclaims, plus interest (including pre-judgment interest), all costs, expenses and attorneys' fees incurred in pursuing the Counterclaims; and

F.  Awarding Fox such other and further relief as the Court deems just, proper, and equitable.

Dated: New York, New York
       June 3, 2008

REED SMITH LLP

By: _____
    John P. Hooper
    Eric F. Gladbach
    Wallace B. Neel
    599 Lexington Avenue
    New York, New York  10022
    (212) 521-5400
    *Attorneys for Defendant*
    *Fox Broadcasting Company*

TO: KAYE SCHOLER LLP
    425 Park Avenue
    New York, NY  10022
    (212) 836-8000

    *Attorneys for Plaintiff*
    *4Kids Entertainment, Inc.*